IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MALBCO HOLDINGS, LLC, individually and as
assignee of Centennial Inn-Vestments, LLC,

                Plaintiff,

     v.

AMCO INSURANCE COMPANY, a foreign
insurance corporation,

                Defendant.

CV-08-585-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

      The jury found that defendant, AMCO Insurance Company ("AMCO"), breached its

insurance policy with plaintiff, Malbco Holdings, LLC ("Malbco"), by denying coverage for

collapse of the hotel and awarded damages to Malbco in the amount of $941,268.  Pursuant to its

25th Affirmative Defense, AMCO now seeks a credit against that award of damages in the sum of

$1,650,000, which is the amount Malbco recovered in settlement of its construction defect claim

1 - OPINION AND ORDER

from the hotel builder, Paras General Contractors ("Paras").  For the reasons set forth below, this

court will enter judgment in favor of Malbco and against AMCO in the sum of $244,141.91.

## FACTUAL BACKGROUND

In August 1999, Centennial-Inn Vestments, LLC ("Centennial"), entered into an AIA

contract with Paras for construction of the hotel.  Wilcox Decl., Ex. A.  That AIA contract

incorporated the standard form "General Conditions of the Contract for Construction," which

provided that Paras would not be liable for damages caused by errors or omissions of the

architect, excluded damages or defects caused by insufficient maintenance or improper

operation, and waived consequential damages including damages incurred by the owner for

rental expenses, for loss of use, income, profit, financing, business, and reputation.  *Id*, Ex. B.

The AIA contract also provided a mechanism for the parties to resolve disputes through

arbitration utilizing the rules of the American Arbitration Association ("AAA") and specified

that the architect could not be joined in any such arbitration.

The City of Eugene issued a Temporary Certificate of Occupancy on June 22, 2000, and

the hotel opened shortly thereafter.  *Id*, Ex. C.  Pursuant to ORS 12.080(1) and the AIA Contract,

Malbco and Centennial had six years from substantial completion to bring a claim against Paras

for construction defects.

In April 2004, Malbco's owner, James Mulloy, notified Paras of water damage to the

hotel which appeared to be caused by defective plumbing.  He encouraged Paras to notify its

insurance company, visit the property, and perform its own investigation.  *See* Trial Exhibits

736, 522.  On March 14, 2006, plaintiff's counsel, Bryce Wilcox, wrote Paras that the owner

intended to "remediate the extensive water/moisture damage to the hotel" beginning the

following week and invited Paras to inspect the damage before the repairs.  Rogers Decl., Ex. A

(proposed Trial Exhibit 626).

Malbco and Centennial submitted the dispute to AAA on March 24, 2006, claiming

$1,800,000 in damages for breach of contract, breach of implied warranty and negligence arising

from:  "Defective workmanship in (1) installation of plumbing/bath fixtures, (2) installation and

placement of building siding, and (3) construction of pool area in construction of hotel, causing

extensive water and structural damage."  Rogers Decl., Exs. B (proposed Trial Ex. 805) & C

(proposed Trial Ex. 809); Wilcox Decl., Exs. D & J.

Also on March 24, 2006, Paras asked Malbco to give notice of all future repairs.  Wilcox

Decl., Ex. E.  On March 29, 2006, Paras notified the subcontractors of potential claims relating

to the hotel, but several objected to participating in AAA arbitration and others objected to

venue.  *Id*, Ex. F.  In June 2006, Malbco made a claim under AMCO's policy.

In its Answer and Affirmative Defenses to the arbitration, Paras claimed, among other

things, that some or all of Malbco's damages were caused by the architect's design defects.  *Id*,

Ex. M.  Paras also asserted that Malbco's claims were barred by the statute of limitations, the

economic loss rule, and the doctrine of spoliation.  Paras further asserted that Malbco waived its

claims pursuant to paragraph 4.2 of the AIA Contract when it accepted the completed work of

Paras and made the final payments.  Finally, Paras alleged that the AIA Contract waived any

claim for lost interest and business income.

To rebut these defenses, Malbco retained an architect, Jon Pietz, of Western Architectural

to address the design issues and focus significant attention to the allegations of improper use and

maintenance.  Mr. Pietz prepared a report for the construction defect claim against Paras dated

3 - OPINION AND ORDER

June 19, 2007, which listed total "cost to repair project" as $1,769,446.71, including expert

witness fees of $61,554.63. Rogers Decl., Ex. E (MacGillivray Depo., Ex. 3). Malbco provided

Mr. Pietz's report to another expert, Andrew MacGillivray, who prepared a report dated June 29,

2007, listing Malbco's "total losses" as $2,226,398.38. *Id*, Ex. 2. This figure included the total

from Mr. Pietz's report plus interest to fund the repair costs ($137,140.67), lost room profits

($288,262), and interest on lost room profits ($31,549).

Paras later submitted a request to add a counterclaim against Centennial, claiming it

failed to provide design documents and services free from errors, omissions, and deficiencies,

submitted a draft of a Motion for Summary Judgment Concerning Spoliation, and also advised

that it was preparing a Motion for Partial Summary Judgment Concerning Consequential

Damages (interest and profits). Wilcox Decl., Exs. Y & Z.[1]

Shortly thereafter in late August and early September 2007 after a mediation prior to

commencement of the arbitration, the parties reached a settlement concerning all claims between

them. Paras and its sub-contractors paid Malbco $1,650,000 and, in exchange, Malbco released

all claims against them. Wilcox Decl., Ex. CC. Because Malbco believed that the settlement did

not fully cover its losses for damage to the hotel and because AMCO had previously denied

coverage under the policy, Malbco filed this lawsuit a few weeks later in October 2007.

Malbco hired Mr. Pietz to be an expert witness in this case. His report dated October 8,

2008, listed the same amount for damages ($1,769,446.71) as his report for the construction

---

[1] Malbco has submitted evidence that AAA arbitrators ruled, as a matter of law, in a different matter that the AIA Contract does not allow for recovery of lost profits or interest. Wilcox Decl., Exs. AA & BB. AMCO moves to strike this evidence as irrelevant because it concerns different arbitrators, a different contract, a different hotel and a different owner, is hearsay, and lacks proper authentication. Malbco did submit the underlying motion which confirms that the ruling involved the same AIA contract provision (Wilcox Decl., Ex. AA), and although involving a different arbitration, the ruling shows that Paras reasonably believed the AIA Contract waived consequential damages. However, the ruling was issued February 26, 2008, nearly six months after the Paras settlement. Therefore, the evidence is irrelevant to the issues in this case and is not considered.

defect arbitration proceeding.  Rogers Decl., Ex. G.  Malbco also hired Mr. MacGillivray who

submitted his expert report dated October 8, 2008, listing the same amount for damages

($2,226,398.38) as in his report for the construction defect arbitration proceeding.  Rogers Decl.,

Ex. E (MacGillivray Depo., Ex. 1).  This sum included $319,811 for lost net profits on rooms

out-of-service plus interest.

 Just prior to trial, Malbco reduced its damage claim to $1,602,142.22 for repair costs and

$229,152 for business income loss, for a total exceeding $1.8 million.  The repair cost figure

deleted items that AMCO contended were not covered by its policy.  During trial, Malbco

reduced its claim for repair costs to just under $1.5 million and its claim for business loss to

$228,940, for a total exceeding $1.7 million.  Trial Ex. 147.  The jury awarded Malbco $941,268

for repair costs and lost profits caused by "collapse."

## DISCUSSION

## I. Right to Offset

 AMCO claims a credit against the jury verdict in the amount Malbco recovered in the

Paras settlement.  The credit is based on the 25th Affirmative Defense in AMCO's Amended

Answer which alleges:

> [AMCO] is entitled to offset of any covered loss with amounts recovered
> by [Malbco] from parties responsible for the loss based on equity or on the
> following policy condition:  "If any person or organization to or for whom
> we make payment under this policy has rights to recover damages from
> another, those rights are transferred to us to the extent of our payment.
> That person or organization must do everything necessary to secure our
> rights and must do nothing after loss to impair them."

By Order dated August 7, 2009 (docket #297), this court dismissed the 25th Affirmative Defense as to any offset based on the policy condition allowing subrogation, thus limiting the defense only to entitlement of an offset based "on equity."

Malbco contends that AMCO is not entitled to any equitable offset or, in the alternative, if the court allows an equitable offset, should reduce the judgment at most to $746,814, exclusive of interest and attorney fees.

A.    **Equitable Offset**

Even though AMCO is not allowed to claim any right to a credit based on the policy provision allowing subrogation, it nevertheless retains the right to an equitable offset. Oregon law permits a non-settling party a credit when the plaintiff has settled with others. Where the plaintiff settles with third parties and then seeks damages for the same injuries from the defendant, the defendant is entitled to a setoff for the amount of the prior recovery. *Maduff Mortg. Corp. v. Deloitte Haskins & Sells*, 98 Or App 497, 506, 779 P2d 1083, 1088-89 (1989), *rev. dismissed*, 309 Or 231, 787 P2d 484 (1990). Courts in other jurisdictions expressly allow insurers to obtain such an equitable setoff.

> In equity, the rule is that an insurer is entitled to reimbursement of benefits paid where the insured recovers payment for the same loss from a tortfeasor. "The equitable principle, based on unjust enrichment, is that an injured party is entitled to be made whole but should not be allowed to duplicate recovery."

*Roberts v. Safeco Ins. Co.*, 87 Wash App 604, 608, 941 P2d 668, 671 (1997), citing *State Farm Mut. Auto. Ins. Co. v. Lou*, 36 Wash App 838, 841, 678 P2d 339, 341 (1984); *accord Sargeant v. Int'l Union of Operating Engineers*, 746 F Supp 241, 246 (D Conn 1990).

Here Malbco recovered $1,650,000 from the Paras settlement and $941,268 from the jury in this case, for a total recovery of $2,591,268, which is more than its claim for damages in either the arbitration or the trial.  If all of the damages sought by Malbco in this action were also included in the settlement obtained from Paras, then Malbco would be overcompensated by retaining both of these recoveries.  AMCO is seeking an equitable setoff to prevent such unjust enrichment.

> ### B.    <u>Effect of Denial of Coverage</u>

Malbco contends that AMCO is barred from setting off the amount recovered from the Paras settlement because it breached the contract by denying coverage under the policy.  In support it cites *Buckman v. Hill Military Acad.*, 190 Or 194, 201, 223 P2d 172, 175 (1950), for the general proposition that "equity will not aid plaintiff on account of her nonperformance of her obligations under the contract."  *Buckman* has no bearing on this case.

In *Buckman*, the plaintiff sought to enforce a promissory note issued by defendant to buy land for a subdivision.  The defendant alleged that the note had been cancelled when the plaintiff failed to release a certain number of lots upon the defendant making certain payments.  As a result, the defendant was unable to sell the lots to raise money to make further payments on the note.  The Oregon Supreme Court held that the plaintiff could not recover damages because her material breach of contract prevented performance by the defendant:

> Where there is an essential part of a contract that one party shall perform certain acts which are requisite to enable the other party to carry out his part of the agreement, a repudiation of the agreement on the part of the former party, . . . absolves the other party from complying with his part of the contract and gives him the right to rescind.

*Id*, 190 Or at 201, 223 P2d at 175.

7 - OPINION AND ORDER

*Buckman* is consistent with the "general rule, that a breach or nonperformance of a promise by one party to a bilateral contract so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty." *Wasserburger v. Am. Scientific Chemical, Inc.*, 267 Or 77, 82, 514 P2d 1097, 1090 (1973) (citing *Buckman*; remaining citations omitted*).* That rule is inapplicable here. AMCO has not sued Malbco for breach of contract. Instead, Malbco sued AMCO to enforce a contract. AMCO is not attempting to defend against that claim by contending that Malbco failed to perform its obligations under the contract. It simply disputed coverage under the policy provisions. There is no issue of bilateral dependent duties under the policy.

Malbco also relies on *Roberts v. Fireman's Ins. Co. of Newark, N.J.*, 376 Pa 99, 101 A2d 747 (1954), and *Powers v. Calvert Fire Ins. Co.*, 216 SC 309, 57 SE2d 638 (1950). However, those cases also are distinguishable. There the insurers sought to avoid coverage because the insureds settled with at-fault parties without first obtaining permission as required by the "consent to settle" clause in the policies. Because the insureds had not paid the claim, the courts rejected their attempt to enforce the "consent to settle" clauses in order to bar recovery. However, the courts still allowed credits to the insurers for the amounts recovered by the insureds from others. AMCO has not asserted the "consent to settle" clause as a defense to coverage, but merely requests a credit from the verdict for amounts recovered from Paras as compensation for the same injuries.

Malbco also complains that when AMCO denied coverage under the policy, Malbco was forced to seek recovery for its damages in a costly, time-consuming, and risky action against Paras. That complaint is unwarranted.

8 - OPINION AND ORDER

> Where an insured recovers from a tortfeasor by way of settlement or
> judgment, and the insured must reimburse an insurer for its payment under
> a policy, the insured is permitted to deduct a proportionate share of the
> costs and attorneys' fees attributable to recovery of the insurer's payment,
> based upon the amount of recovery by the insurer.

16 Couch on Insurance 3ʳᵈ § 226:45.

Similarly, for an offset based on equity, the court can prevent any unfairness to Malbco by deducting from AMCO's offset the fees and expenses incurred by Malbco to obtain the settlement from Paras.

## C.    <u>Unclean Hands</u>

Malbco also argues that AMCO is barred by the unclean hands doctrine from receiving a credit for the Paras settlement. This is nothing more than another attempt by Malbco to resurrect an insurance bad faith claim previously rejected by this court.

Generally, the unclean hands doctrine requires that one must come into a court of equity with clean hands. "Unclean hands" is conduct that equity considers unethical, *i.e.*, conduct that is "inequitable, unfair and dishonest, or fraudulent and deceitful." *Martin v. Allbritton*, 124 Or App 345, 351-52, 862 P2d 569, 573 (1993), quoting *Baxter v. Redevco, Inc.*, 279 Or 117, 121, 566 P2d 501, 503 (1977). However, the doctrine has limitations. "In quantitative terms, the misconduct must be serious enough to justify a court's denying relief on an otherwise valid claim. Even equity does not require saintliness." *N. Pac. Lumber Co. v. Oliver*, 286 Or 639, 651, 596 P2d 931, 939 (1979). The misconduct also must bear some proximate relationship to the subject matter in controversy. *Id.*

To show unclean hands, Malbco first relies on AMCO's denial of coverage. A denial of coverage is nothing more than a breach of contract. Breach of a contract, whether substantial or

material, is not enough to constitute "unclean hands."  Otherwise, any insurer who disputed

coverage could not receive a credit.  A simple dispute over liability under a contract is not

sufficient to establish unclean hands.  *Pan Am. World Airways, Inc. v. Zubi*, No. 86-1264, 1988

WL 363487, at *4 (D Or May 3, 1988) (no unclean hands by suing in violation of settlement

agreement).  AMCO denied coverage based on its interpretation the policy language.  Although

this court rejected AMCO's interpretation, the fact that AMCO disputed coverage is not unfair,

dishonest, fraudulent, deceitful, or criminal and, therefore, does not constitute unclean hands.

        Malbco also accuses AMCO of unclean hands because it negligently handled the claim.

This is another attempt to reprise a bad faith claim that Oregon does not recognize and that this

court rejected at several stages of this litigation, including summary judgment motions,

discovery motions, motions in limine, and instructions to the jury.

In Oregon, the manner in which an insurer investigates a claim is not inequitable conduct which

would result in imposition of equitable remedies such as estoppel against the insurer.

ORS 742.056.  Furthermore, alleged negligence is neither bad faith nor "unclean hands" and was

done to Centennial, the policyholder, not to Malbco, the assignee.

·        Malbco specifically complains about AMCO's failure to provide Centennial with a copy

of the K-Net report.  However, AMCO had no contractual, statutory, or other legal duty to

provide a copy of that report.  Ray Latham testified that he did not provide it because he

considered it to be proprietary.  Rogers Decl., Ex. J.  Moreover, lack of the K-Net report did not

injure Centennial.  Based on observations by the persons on site and its own consultants, as well

as its receipt of copies of Kathy Ellis' reports, Centennial was put it on notice that repairs and/or

10 - OPINION AND ORDER

further investigation were needed.  In sum, any alleged negligent claim handling is not a basis

for a finding of "unclean hands".

>    **D.**    **Collateral Source Rule**

Malbco claims that the collateral source rule permits it to recover damages under both the

Paras settlement and AMCO's policy, even if the recovery is duplicative.  That contention is

based on a misunderstanding of the collateral source rule.

The collateral source rule provides that "if an injured party received some compensation

from a source wholly independent of the tortfeasor, such compensation should not be deducted

from what he might otherwise recover from the tortfeasor."  *White v. Jubitz Corp.*, 347 Or 212,

219 P3d 566 (2009), quoting *Reinan v. Pac. Motor Trucking Co.*, 270 Or 208, 213, 527 P2d 256,

259 (1974).  The rationale is that such payments are either "'a pure gift, not intended by the giver

to be in lieu of damages, or else it is given in performance of a contract, the consideration of

which was furnished by the plaintiff,'" and in neither case has the defendant "'any equitable or

legal claim to share in the benefit.'"  *Id*, quoting *Cary v. Burris,* 169 Or 24, 28, 127 P2d 126, 128

(1942).

The collateral source rule is limited to tort claims and prevents a reduction of damages

from a tort verdict by benefits received by the injured party.  Malbco is attempting to apply the

collateral source rule backwards.  In the arbitration between Malbco and Paras, the collateral

source rule would have excluded evidence of the property insurance issued by AMCO to

Malbco.  It does not apply to this action by AMCO to seek an offset.  Paras, not AMCO, is the

tortfeasor.  The amount to be deducted was paid by Paras and its subcontractors in settlement as

damages, not as a gift or as benefits.  AMCO issued the insurance policy wholly independent of

Paras, the tortfeasor.  AMCO is not seeking an offset for any statutory or insurance benefit, but is

seeking an offset for Malbco's recovery from Paras for damage caused by defective construction.

Contrary to Malbco's contention, *Seibel v. Liberty Homes, Inc.*, 305 Or 362, 752 P2d 291

(1988), did not apply the collateral source rule to a breach of contract claim.  After the jury

awarded damages to a disabled employee for breach of his employment contract, the employer

sought to reduce damages by the social security benefits later received by the employee.

Viewing the claim as one for wrongful discharge, the court disallowed the deduction based on

the legislative purpose behind the social security public benefit program.  Although it noted that

its decision was consistent the policy behind former ORS 18.580 (now 31.580) governing the

collateral source rule in bodily injury claims, it expressly acknowledged that this statute "does

not directly apply."  *Id*, 305 Or at 369, 752 P2d at 295.

## II.    <u>Amount of Offset</u>

In Oregon, the court decides the amount of the setoff, not the jury.  *Yardley v. Rucker

Bros. Trucking, Inc.*, 42 Or App 239, 243, 600 P2d 485, 488 (1979).  AMCO, the party seeking

the offset, has the burden of proving that the injuries for which recovery was sought were the

same in both the arbitration and this case.  *Maduff Mortg. Corp.*, 98 Or App at 506, 779 P2d at

1088-89.  Mr. Pietz testified that all of the damage at the hotel was caused by construction

defects.  His two reports, as well as Mr. MacGillivray's two reports, confirm that Malbco

initially sought the same damages from AMCO as it sought from Paras.  Malbco eventually

reduced the damages claimed from AMCO by repairs that it conceded were not caused by

collapse, and the jury further reduced Malbco's damages.  However, all of the repair costs

included in the jury's verdict were also included within the repair costs sought and recovered

from Paras.  To avoid an inequitable duplicate recovery by Malbco, AMCO is entitled to some

credit for the Paras settlement against the jury verdict.  The issue is how much.

As the general methodology, Malbco proposes that the amount of the jury verdict

($941,268) should be reduced by lost business income not included in the Paras settlement

($229,115), for a maximum amount of $712,153 subject to any offset.  Then it proposes reducing

AMCO's offset by its arbitration costs ($161,699) and arbitration risk ($356,000), for a net

"credit" to AMCO no greater than $194,454 ($712,153 - $517,699).  This would result in a net

judgment to Malbco of $746,814 (exclusive of attorney fees, costs, and pre-judgment interest).

AMCO contends that the amount of the offset should be the full amount of the Paras

settlement of $1,650,000, resulting in no net judgment to Malbco.  Alternatively, it disagrees

with Malbco's proposed deductions from the offset for lost business income and arbitration risk.

Without those deductions, AMCO calculates the amount of its offset as $941,268, less arbitration

costs, resulting in a net judgment to Malbco equal to its arbitration costs.

A.    **Business Income Loss**

The parties first dispute how to handle Malbco's claim for $228,940 as lost business

income.[2]  Although the jury awarded damages to Malbco, the verdict form did not separate

business income loss from the other damages.  In contrast, Malbco asserts that the Paras

settlement did not include consequential damages, including business income loss, because the

AIA Contract with Paras waived such damages.  Therefore, Malbco argues that the full amount

of $228,940 sought as lost business income should be subtracted from the jury verdict before

allowing AMCO any offset (or, alternatively, deducted from AMCO's offset).

_____

[2]  Malbco mistakenly refers to its claim for lost business income as $229,115.

AMCO first contests the amount claimed by Malbco.  The sum of $228,940 is the amount of business income loss calculated by Mr. MacGillivray for the time period from November 10, 2005, through March 2007.[3]  However, this calculation did not limit the time period for lost profits to the 12 months (through November 2006) required under both AMCO's policy and the court's instructions to the jury.  In contrast, AMCO's expert witness, William Partin, opined that the lost business income ranged from $75,548 to $53,756 for that 12 month time period, depending on the assumptions used.  Therefore, even if the jury awarded Malbco all of its lost profits for 12 months, AMCO posits that the sum would be substantially less than $228,940.

Since the jury did not segregate its award between repair costs and lost business income, neither AMCO nor this court can ascertain whether the jury accepted the calculation by Mr. MacGillivray or the one by Mr. Partin.  Given that AMCO has the burden to prove the amount of its offset, this court must assume that the jury awarded lost business income as calculated by Mr. MacGillivray.

However, as noted, Mr. MacGillivray's calculation extended beyond the allowed 12 month time period.  According to Malbco, some of the alleged "collapse" covered by the policy occurred in the conference room area in August and September 2006, which would extend the 12 month time period past November 2006 and through March 2007.  However, it is far from clear from the trial testimony when the collapse in that area actually occurred.  Therefore, lost business income from December 2006 through March 2007 must be excluded.  According to the schedule attached to Mr. MacGillivray's report, lost business income for those four months is

---

[3] AMCO seeks a deduction of $46,529 for lost room revenue prior to August 2005.  However, that request is based on Mr. MacGillivray's report dated October 8, 2008, which calculates lost room revenue of $288,262 from February 2004 through March 2007.  Rogers Decl., Ex. E (MacGillivray Depo., Ex. 1).  At trial, Mr. MacGillivray testified that lost room revenue totaled $228,940 for the time period from November 10, 2005, through March 2007.  Thus, no deduction is necessary for the time period prior to August 2005.

$2,095. Thus, $2,905 must be deducted from the lost business income of $228,940 claimed by Malbco.

AMCO also contends that no amount of lost business income should be subtracted from the jury verdict. In that regard, it first argues that not being a signator to the AIA Contract, Malbco is not bound by its provisions, including the waiver of consequential damages. However, when Malbco purchased the hotel from Centennial, it also purchased "[a]ll claims, including claims against contractors . . . and causes of action dealing with any and all damages to the Property, including, without limitations, claims related to the water loss more particularly described within section 8." First Amendment to Purchase and Sale Agreement, § 1.2.8. Centennial also "fully assign[ed]" to Malbco all of Centennial's "right, title, and interest to any and all policies of insurance in which [Centennial] has an interest relating to the Property, including . . . all insurance policies that may provide coverage for damage to the Property." *Id*, § 8. Therefore, Malbco stepped into Centennial's shoes with respect to the AIA Contract and is bound by its provisions, including the waiver of consequential damages.

Despite the waiver of consequential damages in the AIA contract, AMCO further argues that the Paras settlement necessarily included consideration of a potential claim for lost profit. AMCO is correct. Malbco not only pursued a claim under the AIA Contract, but also possessed and pursued a negligence claim in the AAA arbitration proceeding against Paras. Wilcox Decl., Ex. J. Indeed, Mr. Wilcox spent time researching the negligence claim and the claim for lost rentals, and Mr. MacGillivray issued an "economic loss report" to support the claim for lost rentals. Wilcox Decl. re: AMCO's Motion to Strike, Ex. A; Rogers Decl., Ex. E (MacGillivray

Depo., Ex. 2).  Because Malbco, as a subsequent purchaser of the hotel, suffered injury to its

business and property, its claim for economic loss is permitted under Oregon law:

> [D]eterioration to the physical structure of a building because of defective
> construction is property damage and not "economic loss," and . . . the
> economic loss doctrine, as developed in Oregon, does not bar a negligence
> claim by a subsequent purchaser against the builder to recover damages
> for the costs of repairing structural damage due to defects in construction.

*Bunnell v. Dalton Const., Inc.*, 210 Or App 138, 142, 149 P3d 1240, 1241 (2006), *rev. denied*,

344 Or 558, 187 P3d 219 (2008); *also see Harris v. Suniga,* 344 Or 301, 308-11, 180 P2d 12, 15-

17 (2008) (downstream owners of an apartment building could sue builder in negligence for dry

rot caused by defective construction).

A negligence claim permits the recovery of lost profits as consequential damages if they

were reasonably foreseeable.  *Cluck v. Fish*, 230 Or 63, 67, 368 P2d 626, 628 (1962) ("[T]he

right to recover profits claimed to have been lost as a result of a tort or breach of a contract is

now generally determined by the same rules as govern recovery of other damages.").  Thus, the

lost business income awarded by the jury also was fully included within the lost business income

sought and recovered in the Paras settlement through the negligence claim.  As a result, Malbco

is not entitled to any reduction in AMCO's offset for lost business income.

### B.    <u>Non-covered Repair Damages</u>

Malbco correctly points out that the settlement with Paras included repair damages that

were both covered and not covered under AMCO's collapse coverage.  For example, the Paras

settlement included damages for the new pool HVAC system, damages to the south elevation of

the hotel, and damages to the northeast corner which were not damages caused by the collapse.

As a result, Malbco did not seek the recovery of most of those damages from AMCO in this case.

Malbco may well have recovered additional or non-covered damages in the Paras settlement. That does not change the fact, however, that the damages Malbco recovered from AMCO were completely subsumed within the Paras settlement.

### C.    <u>Arbitration Expenses</u>

Malbco seeks to recover $161,669.74 that it expended in arbitration-related expenses. Wilcox Decl. (dated Nov. 9, 2009), ¶¶ 37-38 & Ex. HH; Wilcox Decl.(dated Dec. 2, 2009), Ex. A.[4]  AMCO does not contest Malbco's right to deduct these arbitration expenses from its offset, but contests the amount claimed by Malbco as excessive.

First, it objects to fees incurred from November 2004 through February 2006 prior to Malbco's demand for AAA arbitration in March 2006.  However, those fees were necessarily incurred as part of the investigation necessary to pursue the claims against Paras in the arbitration and may reduce AMCO's offset.

Second, it objects to one time entry on August 18, 2008, nearly a year after the Paras settlement, to review a letter from Paras' attorney concerning the settlement agreement and a conference regarding the AAA stipulation and order of dismissal.  However, this appears to simply be related to tying up a loose end related to the arbitration and may reduce AMCO's offset.

Third, it objects to fees incurred on March 1 and 4, 2006, relating to insurance coverage. Mr. Wilcox endeavored to exclude fees relating to insurance coverage appearing on his bills

---

[4] AMCO moved to strike the conclusory statements initially submitted by Malbco concerning the amount of these expenses.  Malbco subsequently submitted the detailed back-up documentation, rendering this motion moot.

which Malbco will request after entry of judgment in this case.  However, it appears that he may

have missed the four entries on March 1-3, 2006, totaling $1,024.00, which all relate to revising

a memorandum on insurance coverage.  Since they include work on two other issues (statute of

limitations on claims against architects and substantive claims under Oregon law), only a portion

should be excluded.  Given the three issues, a one-third reduction in the sum of $341 is

reasonable.

        Fourth, it objects to fees incurred to consider bringing a claim against the architect when

Malbco did not sue or recover anything from the architect.  Although the AIA Contract

prevented joinder of the architect in the AAA arbitration, the work done by Malbco's attorneys

related to the architect was necessary to defend against the defense by Paras that the architect

was responsible for Malbco's damages.  Moreover, whatever fault Paras could attribute to the

architect directly impacted the amount Paras would pay Malbco to settle its claims.  Thus, this

time may reduce AMCO's offset.

        Fifth, it objects to Western Architectural's fees relating to monitoring or directing the

repairs or a possible claim against the architect.  For the same reason that Malbco may recover

the time incurred by its attorneys to determine the architect's culpability, it may recover for work

done by its expert to work on the claim against the architect.  Thus, this time may reduce

AMCO's offset.

        Sixth, it objects to billings by McCann Engineering based on the absence of any

supporting invoices.  Because these billings are listed on the invoices from Western

Architectural as "Project Engineer- McCann Engineering," they clearly were engineering

services incurred as part of Western Architectural's consulting and monitoring services.  Thus, they may reduce AMCO's offset.

AMCO also argues that any reduction in its offset for arbitration-related expenses should be in proportion to the benefit received by AMCO from the settlement, *i.e*, the expenses multiplied by the offset divided by the total recovery from the builder.  As discussed below, this court concludes that the appropriate offset is equal to the full amount of the Paras settlement, but that the offset should be deducted from the total amount of Malbco's losses, not from the amount of the jury verdict in this case.  Therefore, AMCO will obtain the full benefit of the Paras settlement and is not entitled to any *pro rata* deduction of the expenses incurred to obtain that settlement.

Accordingly, Malbco is entitled to recover its arbitration-related expenses from AMCO in the sum of  $161,328.74 ($161,669.74 - $341.00).

### D.    Arbitration Risk

AMCO calculates the amount of the offset by starting with the amount of the jury verdict ($941,268), deducting all of the Paras settlement ($1,650,000), and adding Malbco's arbitration-related expenses.  Because the jury verdict is substantially less than the amount of the Paras settlement, this calculation results in AMCO only reimbursing Malbco for its arbitration-related expenses.  Although it prevents a double recovery by Malbco, it also results in Malbco recovering substantially less than its alleged loss of over $2,000,000.

AMCO believes that this result is equitable because Malbco entered into an arms-length agreement with Paras to settle the arbitration claims for $1,650,000.  If Malbco felt that this

19 - OPINION AND ORDER

amount was inadequate to cover its repair costs attributable to the construction defects, it could have refused to settle and proceeded to arbitrate its claims only a few weeks later.

However, AMCO's position ignores the element of potential risk inherent in any dispute which necessarily forces a compromise settlement less than the amount claimed. Paras and its sub-contractors advanced numerous defenses to Malbco's claims, any number of which could have resulted in a partial or complete defense verdict had the matter proceeded to arbitration. Furthermore, if Malbco had not accepted the settlement, it would have spent considerably more time and money in the arbitration proceeding. Had AMCO paid Malbco's insurance claim and pursued its contractual subrogation rights in the arbitration, it, too, would have engaged in a similar risk assessment. To require AMCO to share in this risk, Malbco seeks to cut AMCO's offset in half. However, Malbco cites no authority for such a 50% deduction, and this court can conceive of no rationale to allow it.

AMCO is correct that Malbco is not entitled to a duplicative recovery. However, to the extent that Malbco did not fully recover its losses from the Paras settlement, as a matter of equity, it should be allowed to recover the rest of those losses from the jury verdict in this case. After it settled the arbitration, Malbco still had unfunded losses, exclusive of "betterments" (improvements) which it calculates as $495,570.73. This figure is based on a calculation of its total repair costs, loan fees paid to fund the repair, and business income loss less "betterments, for a total of $2,145,570.73. Deducting the Paras settlement of $1,650,000 leaves a shortfall of $495.570.73. Malbco contends that payment of that amount paid by AMCO plus the arbitration expenses would make it whole for its losses without any unjust enrichment.

20 - OPINION AND ORDER

Although this methodology theoretically makes Malbco whole and spreads some of the arbitration risk accepted by Malbco in the Paras settlement, the difficulty is ensuring that the amount of loss claimed by Malbco is accurate and includes only the reasonable and necessary cost to repair the damage to the hotel caused by the construction defects and subsequent collapse. Based on the evidence received at trial, this court concludes that Malbco improperly claims the following items as reasonable and necessary repair costs:

1. "Air Scrubbers": Malbco claims $26,476.84 for air scrubbers. This amount was not included in Malbco's itemization of total damages at trial (docket # 331 & Trial Ex. 147) and was not incurred to repair the hotel. After Centennial discovered water damage in or around February, 2004, it sealed several rooms and placed them under negative air pressure. Malbco did not commence repairs until over 18 months later. There is no evidence that the subsequent repairs were mitigated by the installation of the air scrubbers. Accordingly, the amount for air scrubbers is not part of the total repair cost and must be deducted.

2. Business Income Loss: Malbco lists its business income loss as $319,811, which is the amount listed in Mr. MacGillivray's October 8, 2008 report consisting of $288,262 lost room profits and $31,549 interest on lost room profits. Rogers Decl., Ex. E (MacGillivray Depo., Ex. 1). As discussed above, the recoverable amount of business income loss under the policy is limited to 12 months. However, if recovered from Paras, the loss would not be limited in time. Therefore, the appropriate amount to include as part of Malbco's loss is the full sum of $288,262.

Prejudgment interest on that amount is not recoverable. "[A] trial court may award prejudgment interest on damages only when the exact amount is ascertained or easily

ascertainable by a simple computation or by reference to generally recognized standards such as market price and where the time from which interest should run is also easily ascertainable." *Strader v. Grange Mutual Ins. Co.*, 179 Or App 329, 338, 39 P3d 903, *review denied*, 334 Or 190, 47 P3d 485 (2002). Lost profits are not subject to easy calculation, as shown by the contrasting opinions of Mr. Partin and Mr. McGillivray. Since prejudgment interest is not recoverable, $31,549 must be deducted from the business income loss.

3. <u>Loan Fees Paid to Fund Repair</u>: Malbco includes $137,140.67 as "loan fees paid to fund repair." No documentation supports this expense and Malbco has submitted no information about interest rates or the term of the loans which would allow a determination of reasonableness. More importantly, Mr. Mulloy and his wife personally borrowed the money to fund the repairs. Mulloy Decl. (docket # 362), ¶¶ 9, 10, 11. Mr. and Mrs. Mulloy were not owners of the hotel, were not parties to the arbitration, and are not parties to this action. Since these fees were not incurred by Malbco, they must be deducted.

4. <u>Miscellaneous Items</u>: Malbco includes $5,490.40 for "temporary signage, pool deck drain etc.," but provides no documentation to explain or support such expenses or show why they were recoverable from Paras as repair costs for construction defects. Furthermore, Malbco did not claim them at trial. Therefore, this amount must be deducted.

5. <u>Lost Sinks and Faucets (Field Order 29)</u>: Malbco replaced missing sinks and faucets from Rooms 200 and 300 that were lost after being removed. Trial Exs. 81.87-88. Because this loss is attributable to Malbco and not necessary to repair the damage, $608.88 must be deducted.

6. <u>Betterments</u>: In addition to the betterments listed by Malbco for Hardiplank gable ends, timer, fans and tiles totaling $19,273.02, the following betterments must be deducted:

a. Pool Room HVAC Upgrade:  Malbco installed a new HVAC system in the pool room at a cost of $92,994.55.  Trial Ex. 147 (line item under Phase 2).  Malbco produced no evidence that the HVAC system in the pool room was damaged in any way.  Instead, the original system was replaced because it was inadequate to perform the task.  Malbco purchased a better HVAC system than was initially installed when the hotel was built.  This was an upgrade which improved the hotel.  If the HVAC system needed to be replaced, it was not due to a construction defect, but to a design defect not covered by the Paras settlement.  In fact, Malbco deducted $60,000 of the cost for the pool HVAC system in its First Supplemental Itemized List of Special Damages (docket #331) and at trial (Trial Ex. 147), although no explanation was given for that amount.  However, in its most recent calculation of Phase 2 repair costs, Malbco included the full cost of the HVAC system without even its earlier $60,000 deduction.  Therefore, the full amount of $92,994.55 must be deducted.

b. Directive 19:  Malbco also installed a new HVAC system in the conference room.  Trial Exs. 81.79-83, 102.42.  Galen Ohmart testified the conference room had no HVAC system before the repairs.  Adding this new system was a betterment.  This directive also included changing the flue for the water and pool heaters to improve venting, also a betterment. Therefore, $26,187.67 must be deducted.

c. Directive 21:  Malbco added "internet access/set up controls" for the HVAC at a cost of $1,211.00.  Trial Exs. 81.114-116.  This is an upgrade and must be deducted.

d. Siding Upgrade:  Malbco upgraded the siding from vinyl to Hardiplank. Although most of the siding was undamaged, Malbco chose to replace all of the siding on the hotel to accomplish this upgrade.  As the siding was removed, additional damage was discovered

23 - OPINION AND ORDER

on the south side.  Under the circumstances, it was reasonable to remove all of the siding to check for additional damage and then to replace all of the siding to match.  According to Galen Ohmart, there is no cost difference between Hardiplank and vinyl siding.  However, Hardiplank, unlike vinyl, requires painting.  Thus, the additional cost of painting the upgraded Hardiplank siding, $13,942.83 and $17,308.35, must be deducted.  Trial Ex. 147 (line items under Phases 2 and 3).

    e.  Directive 5 (Field Order 11):  Malbco incurred an additional cost of $17,818.63 to install the belly band for the upgraded Hardiplank siding.  Trial Exs. 81.38-44.  Installing a belly band on vinyl siding costs nothing since the installer simply uses a different color panel.  The belly band for the Hardiplank siding cost more because it involved a more complicated installation of a different product between lapped panels of Hardiplank siding.  Thus, the $17,818.63 additional cost must be deducted.

    f.  Directive 10:  Malbco replaced CPVC plumbing with Wirsbo Pex piping.  Trial Exs. 81.19-21.  Galen Ohmart testified this was an upgrade, not part of the repairs.  Thus, $15,169.85 must be deducted.

    g.  Directive 12: Venting was extended to the roof, where it had not extended before.  Because this was an improvement, $7,781.03 must be deducted.  (Trial Exs. 81.109-110, 102.42)

    h.  Directive 14:  Malbco replaced shutters and lattice on the south and east ends of the hotel.  Trial Exs. 81.97-98.  There was no evidence that this was a necessary repair, as opposed to an upgrade.  Thus, $10,178.00 must be deducted.

        i. <u>Directive 16</u>:  Malbco upgraded the metal venting to bathroom fans in 19 rooms at a cost of $7,067.86.  Trial Exs. 81.92-93.  This amount must be deducted.

        j. <u>Directive 18</u>:  Malbco also removed and reinstalled caulking in the swimming pool expansion joints.  Trial Exs. 81.84-86.  Because this is a maintenance item unrelated to the repairs, $1,832.00 must be deducted.

Accordingly, the following items must be deducted from Malbco's claimed repair cost:

| | |
|---|---|
| Air scrubbers: | $ 26,476.84 |
| Interest on business income loss: | 31,549.00 |
| Loan fees: | 137,140.67 |
| Miscellaneous items: | 5,490.40 |
| Lost Sinks & Faucets: | 608.88 |
| Pool HVAC: | 92,994.55 |
| Conference Room HVAC: | 26,187.67 |
| HVAC Internet Controls: | 1,211.00 |
| Siding Painting (Phase 2) | 13,942.83 |
| Siding Painting (Phase 3) | 17,308.35 |
| Siding Belly Band: | 17,818.63 |
| Upgrade CPVC plumbing to Wirsbo Pex piping: | 15,169.85 |
| Extend Venting to Roof: | 7,781.03 |
| Replacing shutters and lattice on south and east sides: | 10,178.00 |
| Upgrade Bathroom Venting: | 7,067.86 |
| Re-Caulk Swimming Pool Expansion Joints: | 1,832.00 |
| | |
| TOTAL DEDUCTIONS: | $412,757.56 |

Deducting that amount from Malbco's claimed repair cost of $2,145,570.73 leaves a net of $1,732,813.17.  Offsetting the full amount of the Paras settlement of $1,650,000 leaves a total unfunded balance of $82,813.17, which is less than the jury verdict returned against AMCO.  In order to provide a full recovery to Malbco with respect to its reasonable and necessary repair costs, AMCO should pay that amount to Malbco in addition to Malbco's arbitration-related expenses of $161,328.74, for a total judgment of $244,141.91.

///

25 - OPINION AND ORDER

///

///

///

///

## **ORDER**

      AMCO is entitled to an equitable offset against the jury verdict in the full amount of

Malbco's prior settlement of its arbitration claims less Malbco's arbitration-related expenses.

Applying that offset against the total repair costs incurred by Malbco as a result of damage to its

hotel, the court will enter judgment in favor of Malbco against AMCO in the sum of

$244,141.91, plus costs and attorney fees.

      DATED this 11th day of January, 2010.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge
