IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MALBCO HOLDINGS, LLC, individually and as
assignee of Centennial Inn-Vestments, LLC,

                    Plaintiff,

      v.

AMCO INSURANCE COMPANY, a foreign
insurance corporation,

                    Defendant.

CV-08-585-ST

OPINION AND ORDER ON
ATTORNEY FEES AND COSTS

STEWART, Magistrate Judge:

       Plaintiff, Malbco Holdings, LLC ("Malbco"), obtained a jury verdict in its favor against

defendant, AMCO Insurance Company ("AMCO"), in the sum of $941,268.00.  After applying

an equitable offset requested by AMCO, the Court entered a Judgment on January 11, 2010, in

///

1 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

favor of Malbco for $244,141.91, plus costs and attorney fees.  The Court is now amending that

Judgment to $363,324.13, plus costs and attorney fees.

Pursuant to ORS 742.061, Malbco has filed a Motion to Establish Reasonable Attorneys'

Fees and Costs (docket # 385).  Malbco seeks an award of attorney fees in the sum of

$520,869.30 ($509,854.30 incurred through January 22, 2010, plus $11,015.00 incurred

thereafter) and costs in the sum of  $85,184.58.  For the reasons set forth below, Malbco is

awarded reasonable attorney fees in the sum of $368,378.85 and costs in the sum of $200.00

with leave to renew for statutory witness fees, copying charge and allowable deposition costs.

## ATTORNEY FEES

## I.    Oregon Law

Pursuant to ORS 742.061,"a reasonable amount to be fixed by the court as attorney fees

shall be taxed as part of the costs of the action" when a plaintiff obtains a recovery on a policy of

insurance that "exceeds the amount of any tender made by the defendant."  Under that statute,

"'reasonableness,' not a particular formula, [is] the lodestar for an award of attorney fees to an

insured who prevails in a policy claim against his or her insurer." *Country Mut. Ins. Co. v.

White*, 212 Or App 323, 333, 157 P3d 1212, 1217 (2007).  Reasonableness depends "on the

totality of the criteria prescribed by ORS 20.075." *G.A.S.P. v. Envtl. Quality Comm'n of the

State of Or.*, 222 Or App 527, 547, 195 P3d 66, 77 (2008).  Those criteria are set forth in ORS

20.075 as follows:

> (1) A court shall consider the following factors in determining whether to
> award attorney fees in any case in which an award of attorney fees is
> authorized by statute and in which the court has discretion to decide
> whether to award attorney fees:

2 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

(b) The objective reasonableness of the claims and defenses asserted by the parties.

(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

(h) Such other factors as the court may consider appropriate under the circumstances of the case.

(2) A court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees in any case in which an award of attorney fees is authorized or required by statute. In addition, the court shall consider the following factors in determining the amount of an award of attorney fees in those cases:

(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

(c) The fee customarily charged in the locality for similar legal services.

(d) The amount involved in the controversy and the results obtained.

(e) The time limitations imposed by the client or the circumstances of the case.

(f) The nature and length of the attorney's professional relationship with the client.

(g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

AMCO raises a number of objections to the reasonableness of Malbco's requested attorney fees.

3 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

II.    <u>**Number of Hours**</u>

Malbco seeks fees from May 11, 2005, through January 22, 2010, for time incurred by

three attorneys: 1,472.70 hours by Bryce Wilcox (lead counsel), 0.30 hour by Michael Franklin,

and 377.65 hours by Laura J. Waldman-Black ("Black").  Wilcox Decl. (docket # 387), ¶ 23.  In

addition, Malbco seeks fees for time incurred by two paralegals (3.30 hours by Carol A. Plzak

and 0.50 hour by Janet K. MacFarlane), two legal assistants (14.80 hours by Penny M. Lamb and

110 hours by Katharine M. Simonson), and a librarian (95 hours by Becky A. Wentz).  *Id*.  For

time billed from January 22 through March 8, 2010, in connection with the post-trial motions,

Malbco seeks an additional $11,015.00 (but without indicating the number of hours incurred by

Mr. Wilcox and Ms. Black).  Wilcox Decl. re: Reply (docket # 415), ¶ 3.  AMCO objects to this

number of hours as excessive.  Although this case was lengthy, complex and hard fought, this

court agrees that the number of hours is excessive and must be reduced.

A.    <u>**Block Billing**</u>

Malbco's attorneys engaged in a practice known as "block billing," which involves

submitting one entry listing multiple activities without breaking down the time for each activity.

With block billing, "the court cannot assess the reasonable number of hours spent on a given task

when the time spent on the task is not segregated from time spent on other tasks."  *Frevach Land

Co. v. Multnomah County, Dept. of Envtl. Servs.*, 2001 WL 34039133 * 9 (D Or December 18,

2001).  The Ninth Circuit has recognized, based on a California State Bar study, that block

billing may greatly increase the amount of time billed by as much as 10% to 30%.  *Welch v.

Metro. Life Ins. Co.*, 480 F3d 942, 948 (9th Cir  2007).  As a result, fees requested in this district

for block billing "of three hours or more are susceptible to being disallowed" or at least

significantly reduced. *Id* at *9, *11. *See also Message from the Court Regarding Attorney Fee Petitions* (found at www.ord.uscourts.gov/examples-and-guidelines).

Although Malbco's counsel has attempted after-the-fact to assign amounts of time for individual tasks in the block-billed entries, it is impossible to accurately recall how much time was spent on specific tasks so long after they were performed. Therefore, this court will view the time entries by specific task only as a best estimate and not give Malbco the benefit of any doubt regarding billing entries.

As AMCO correctly notes, the summary judgment motions heard in December 2008 and in 2009 involved many issues, some of which were unsuccessful. Due to block billing and Malbco's failure to submit the deleted time entries,[1] neither AMCO nor this court can accurately estimate the time spent that was necessary to the result obtained. However, the submitted time entries include substantial time spent on bad faith claims and other claims for which fees should not be awarded, as discussed below.

AMCO suggests that the court apply a 30% percentage reduction to the time spent on these motions. However, the Ninth Circuit has rejected the use of a 20% across-the-board reduction in fees due to block billing. *Welch*, 40 F3d at 948. Therefore, this court must conduct a more detailed analysis to determine whether the number of hours is excessive.

///

**B.    Unsuccessful and Unrelated Claims**

      **1.    Legal Standard**

---

[1] Malbco states the deleted time entries can be ascertained by comparing the original bills attached as Exhibit A to the Wilcox Supplemental Declaration (docket # 398) to the revised bills attached as Exhibit A to the initial Wilcox Declaration (docket # 387). Given the voluminous nature of those billings, Malbco, rather than the court, should bear the burden to make that comparison to support its request for an award of attorney fees.

ORS 742.061 serves a dual purpose.  "The policy behind the statute is to encourage the settlement of claims and discourage the unreasonable rejection of claims by insurers."  *Heis v. Allstate Ins. Co.*, 248 Or 636, 643-44, 436 P2d 550, 553-54 (1968).  *See also Chalmers v. Oregon Auto. Ins., Co.*, 263 Or 449, 452, 502 P2d 1378, 1380 (1972) (the statutory predecessor to ORS 742.061 was "to encourage the settlement of . . . claims without litigation and to reimburse successful plaintiffs reasonably for moneys expended for attorney fees in suits to enforce insurance contracts"); *Mosely v. Allstate Ins. Co.*, 165 Or App 304, 313, 996 P2d 513, 517 (2000) ("the statute seeks to protect insureds from the necessity of litigating their valid claim").

Therefore, a plaintiff is entitled to recover all fees "as long as they are reasonably related to the action itself," including fees incurred before the action was filed.  *Farmers Ins. Co. of Or. v. Trutanich*, 123 Or App 6, 16, 858 P2d 1332, 1339 (1993) (citation omitted).  However, fees must be apportioned between claims for which attorney fees are authorized and other claims.

> When a party prevails in an action that encompasses both a claim for which attorney fees are authorized and a claim for which they are not, the court must apportion the fees incurred for each claim.  It may award only the fees reasonably incurred for the claim for which attorney fees are authorized, except when there are issues common to both claims.

*Greb v. Murray*, 102 Or App 573, 576, 795 P2d 1087, 1088 (1990) (citations omitted); *accord Bennett v. Baugh*, 164 Or App 243, 248, 990 P2d 917, 921 (1999), *review denied*, 330 Or 252, 6 P3d 1099 (2000) (declining to award fees on an unrelated counterclaim for which fees were not authorized).

If the claims involve common issues, then fees can be awarded if "the party entitled to fees would have incurred roughly the same amount of fees irrespective of the additional claim or claims." *Bennett*, 164 Or App at 248, 990 P2d at 921 (citations omitted). In addition, fees can be awarded for work that proved to be ultimately unsuccessful:

> It may be that the prevailing party, in bringing or defending the claim, did work that did not contribute to the party's eventual success – *e.g*., investigated issues or theories that were not pursued or, if pursued, were abandoned before the case was tried, or if not abandoned, were rejected by the finder of fact. Whether and under what circumstances fees should be awarded for such work bears on the reasonableness of the amount requested, not entitlement.

*Id* at 247-48, 990 P2d at 920.

### 2.    **Background**

Malbco retained Washington counsel to initially pursue an arbitration proceeding in Oregon against the building contractor and then to file this action in October 2007 in Washington state court against AMCO and another insurance company, Wausau Business Insurance Company ("Wausau"). That state court action alleged claims for breach of contract, violation of Washington's Consumer Protection Act, breach of the duty of good faith and fair dealing, and a declaratory judgment that Malbco's losses are covered under the insurance policies issued by AMCO and Wausau.

Based on diversity of citizenship, defendants subsequently removed the case to the United States District Court for the Eastern District of Washington. Malbco filed a motion to amend its complaint to add a cause of action under the newly passed Washington Insurance Fair Conduct Act. The court denied that motion. Defendants then filed motions to change venue and to bifurcate trial, and Malbco filed a motion for summary judgment on the choice of law issue,

contending that Washington law governed the dispute.  The Eastern District of Washington

declined to decide the choice of law issue, but granted defendants' motion to change venue and

transferred the case to this court in May 2008.

In December 2008, this court denied Malbco's summary judgment motion to apply

Washington law and granted summary judgment to Wausau against all of Malbco's claims and to

AMCO against the Second and Third Claims in their entirety and against the First Claim to the

extent the loss took place prior to October 24, 2005.  Thus, the sole remaining claim for trial was

the First Claim for breach of contract against AMCO for losses suffered on or after October 24,

2005.  The First Claim also is the only claim for which attorney fees are authorized under

ORS 742.061.

Acknowledging that not all of the claims pursued in this case involved the issue of

coverage under AMCO's policy, Malbco's represents that it has excluded 55.80 hours from its

attorney fee request for time spent pursuing claims against Wausau (29.95 hours) and claims

under Washington law for the tort of bad faith, violation of the Consumer Protection Act, and

violation of the Insurance Fair Conduct Act (25.85 hours).  Wilcox Decl. (docket # 387), ¶ 21.

However, AMCO contests the accuracy of these exclusions.

### 3.     Fees Incurred Prior to Filing Suit

AMCO objects to awarding Malbco fees incurred in May 2005 (1.4 hours by Mr.

Wilcox) before Malbco purchased the hotel and before the collapse.  Malbco concedes this

objection and withdraws that part of its request.

///

///

8 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

AMCO also objects to fees from November 2005 through June 14, 2006, before Malbco notified AMCO of its collapse claim, and from June 26, 2006, through February 16, 2007, before Malbco provided a "proof of loss" to AMCO.

Under Oregon law, a "proof of loss" for purposes of ORS 742.061, is an event or submission that permits an insurer to estimate its obligations (taking into account the insurer's obligation to investigate and clarify uncertain claims). *Scott v. State Farm Mut. Auto. Ins. Co.*, 345 Or 146, 155, 190 P3d 372, 377 (2008). Malbco first notified AMCO of its collapse coverage claim by letter dated June 14, 2006. By that time, repairs were well under way. Due to this late notice by Malbco, AMCO was unable to conduct its own independent investigation and had to wait for documentation from Malbco supporting the nature and amount of the claimed loss. After Malbco finally provided the Western Architectural report on February 16, 2007, AMCO denied coverage by letter dated March 14, 2007. Because it had insufficient information to estimate its obligation prior February 16, 2007, AMCO contends that Malbco should not recover any fees incurred prior to that date.

However, fees incurred before a lawsuit is filed against an insurer may be recovered "as long as they are reasonably related to the action itself." *Farmers Ins. Co. of Or.*, 123 Or App at 16, 858 P2d at 1339 (citation omitted). The issue is not whether the fees were incurred by Malbco prior to filing a proof of loss, as argued by AMCO, but whether the fees reasonably related to Malbco's effort to obtain insurance coverage for the collapse. Here the dispute between the parties did not rest on the specific amount of Malbco's loss, but instead on whether the loss was covered as a collapse as defined by AMCO's policy. AMCO did not believe that a collapse had occurred because the hotel did not fall completely to the ground. Therefore,

regardless of when Malbco notified AMCO of its claim, AMCO would have denied the claim. The time spent by Malbco between November 18, 2005, and February 16, 2007, all related to analyzing the insurance coverage, including the contractual limitations period. Since this time is all reasonably related to pursuing Malbco's insurance claim, it is recoverable.

AMCO also objects to Malbco's fees incurred from February 28 through September 7, 2007, prior to drafting and filing this action. AMCO characterizes much of this time as incurred for the arbitration proceeding against the contractor, such as communications with experts, letter to counsel, and mediation issues. That characterization is inaccurate. The time entries concern communication with the insurers regarding the status of the coverage determination, analyzing coverage issues raised by AMCO's denial, and compiling the business loss claim to update the damage claim. Only the one entry for 0.30 hour by Mr. Wilcox regarding potential mediation issues on June 23, 2007, relates solely to the arbitration and must be deducted. The remainder is recoverable.

### 4.    **Washington Law Claims**

AMCO contends that the time spent by Malbco to file suit in Washington and pursue claims under Washington law should be excluded as unnecessary to the result eventually obtained. According to AMCO, that time includes opposing defendants' motion to change venue and motion to bifurcate trial and stay discovery of the bad faith claims filed in Washington federal court, as well as filing and later withdrawing a motion for summary judgment to apply Washington law (dockets # 28 & # 98) and opposing defendants' motions for summary judgment to apply Oregon law. Although its attempt to pursue claims under Washington law was

unsuccessful, Malbco may still recover its fees for those motions if they were reasonably related to the insurance coverage issue.  As discussed below, some were related and some were not.

### a.    Choice of Law

Whether Washington law applied was a hotly disputed issue only with respect to Malbco's claims against Wausau and tort claims for violation of Washington law and had nothing to do with coverage under AMCO's policy.  Oregon law, which Malbco strenuously sought to avoid, differs from Washington law by invalidating the purported assignment of any claim to Malbco against Wausau, any tort cause of action for bad faith, and any Washington Consumer Protection Act claim.  The parties pointed to no difference between Oregon and Washington law that affected the interpretation of AMCO's policy with respect to the collapse coverage.  Because the choice of law dispute shared no common legal issue with the insurance coverage dispute, the fees incurred by Malbco to apply Washington law are not recoverable.  As best as this court can estimate based on the time records, that time amounts to 55.4 hours for Mr. Wilcox and 24.9 hours for his associate, Ms. Black.[2]

### b.    Dineen Testimony

To support its attempt to apply Washington law, Malbco submitted a declaration from William Dineen, its insurance broker at Wells Fargo.  Therefore, defendants deemed it necessary to take Mr. Dineen's deposition to rebut Malbco's argument that Washington law should apply.

---

[2] Wilcox: 2/8/08, 0.35 hr.; 2/11/08, 0.30 hr.; 2/18/08, 1.65 hrs.; 2/25/08, 1.85 hrs.; 2/26/08, 2.25 hrs.; 3/3/08, 1.00 hr.; 3/4/08, 2.80 hrs. (1.65, 0.30, 0.1, 0.50, & 0.25); 3/5/08, 4.95 hrs. (.50, .55, .40, .25, .25, 1.0 & 2.0); 3/6/08, 4.95 hrs.; 3/7/08, 2.65 hrs. (.75, 1.55, .15, & .20); 3/21/08, 1.30 hrs.; 3/25/08, 0.15 hr.; 3/27/08, 2.35 hrs. (1.0 & 1.35); 3/28/08, 6.50 hrs. (2.0, 1.5, 2.0, 0.5, & 0.50); 4/4/08, 0.40 hr.; 4/7/08, 0.35 hr.; 4/14/08, 1.55 hrs. (1.3 & 0.25); 4/22/08, 5.55 hrs. (3.55 & 2.0); 4/23/08, 4.25 hrs.; 6/9/08, 0.40 hr.; 6/10/08, 0.20 hr.; 6/11/08, 0.85 hr.; 6/12/08, 0.70 hr. (.50 & .20); 8/25/08, 0.40 hr. (.30 & .10); 9/30/08, 2.50 hrs. (2.25 & 0.25) ; 10/1/08, 1.50 hrs. (.75 & .75); 10/2/08, 2.15 hrs. (1.95 & .20); 10/3/08, 1.25 hrs.; 10/11/08, 0.30 hr.  Black: 2/8/08, 0.30 hr.; 2/13/08, 6.00 hrs.; 2/14/08, 6.80 hrs.; 2/15/08, 2.50 hrs.; 2/19/08, 1.10 hrs.; 2/21/08, 2.90 hrs.; 2/25/08, 1.20 hrs.; 2/26/08, 1.50 hrs. (.30 & 1.2); 3/6/08, 0.30 hr.; 3/18/08, 0.20 hr.; 6/10/08, 0.20 hr.; 6/11/08, 1.90 hrs.

11 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

Mr. Dineen did not testify at trial, and his testimony was not necessary to the result obtained by Malbco.  Therefore, fees are not recoverable for 12.45 hours incurred by Mr. Wilcox relating to the testimony of Mr. Dineen.[3]

### c.    Motion to Change Venue

In contrast, time spent opposing the motion to change venue is related to the insurance coverage claim and, thus, is recoverable.  Malbco initially filed this action in Washington state court which defendants removed to federal court based on diversity jurisdiction.  Although the federal court in the Eastern District of Washington had jurisdiction, it was persuaded that venue was more appropriate in the District of Oregon.  Even if Malbco had alleged only one claim against AMCO for breach of contract, it still could have filed that claim in Washington in either state or federal court and then fought a battle with AMCO over venue.

### d.    Motion to Bifurcate and Stay

However, defendants' motion to bifurcate trial and stay discovery of the bad faith claims is unrelated to the insurance coverage claim.  That motion would not have been necessary but for the tort claims.  Thus, the time spent on opposing the motion to bifurcate by drafting and filing the memorandum in opposition is not recoverable.  Unfortunately, most of the time entries for Mr. Wilcox opposing the motion to change venue are combined with opposing the motion to

///

///

///

---

[3] Wilcox: 9/18/08, 1.30 hrs. (.20, .20, .20, .10, & .60); 9/19/08, 0.45 hr. (.25 & .20) ; 9/22/08, 0.40 hr. (.10, .20 & .10); 9/23/08, 0.20 hr. (.10 & .10); 9/24/08, 0.10 hr.; 9/25/08, 0.40 hr. (.15 & .25); 9/29/08, 0.25 hr. (.10 & .15); 9/30/08, 0.20 hr. (.05 & .15); 10/1/08, 0.80 hr. (.25, .30, & .25); 10/2/08, 0.15 hr.; 10/6/08, 1.40 hrs. (1.0 & 0.40); 10/7/08, 6.60 hrs.; 10/15/08, 0.20 hr. (.10 & .10).

bifurcate.  As a best estimate, this court excludes half of his time spent on both motions.

Therefore, 3.4 hours for Mr. Wilcox and 5.7 hours for Ms. Black are excluded.[4]

### 5.    Extra-Contractual Claims

Malbo represents that it has deleted all time entries relating to its claims for bad faith and

claims for violations of Washington's Insurance Fair Conduct Act and Consumer Protection Act.


However, AMCO points to many remaining time entries to pursue those claims, such as

preparing discovery requests seeking information to prove bad faith, filing motions to compel

discovery relating to bad faith claims, filing a motion for reconsideration asking the court to rule

that the contractual limitations period was tolled based on bad faith, seeking to take the

deposition of AMCO claims manager Scott Smith to prove bad faith, opposing a motion for a

protective order relating to this deposition, and seeking to prove a "material breach" of contract

based on bad faith.

### a.    Discovery

Malbco responds that once this court ruled that Oregon law applied, it no longer made any

claim for tort damages under the theory of bad faith, but instead argued that AMCO had an implied

contractual duty to act in good faith under Oregon contract and insurance law.  In particular, it points

out that on August 18, 2008, this court granted Malbco's motion to compel discovery in part because

"the information and documents sought are relevant to the issue of the insurer's good faith in denying

requests for assignment" (docket # 131).  But at that time this court had not yet ruled on the choice of

law issue, and Malbco was still pursuing its Washington law claims.  Therefore, the time incurred by

---

[4] Wilcox: 3/9/08, 0.40 hr.; 3/10/08, 0.20 hr.; 3/14/08, 0.75 hr.; 3/15/08, 1.60 hrs.; 3/17/08, 0.20 hr.; 3/27/08, 0.25 hr. Black: 3/13/08, 0.20 hr.; 3/14/08, 5.50 hrs.

13 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

Malbco seeking discovery to prove bad faith prior to this court's December 11, 2008 ruling that

Oregon law applied (docket # 200) related only to the Washington law claims and must be excluded.

Unfortunately the time entries at issue only generally refer to discovery conferences, initial

disclosures, working on discovery requests to defendants, and motions to compel. Conceivably some

of that effort could be related to the coverage issue. Given that Malbco initially pursued claims under

Washington law, it is reasonable to assume that some, if not most, of the initial discovery requests

related to those claims. Malbco has the burden of proof to support its fee request and has submitted

nothing to persuade this court otherwise. Therefore, this court excludes 46.0 hours incurred by Mr.

Wilcox, 0.70  hour incurred by Ms. Black, and 1.0 hour incurred by Penny M. Lamb ("PM"), a

paralegal, to pursue discovery prior to December 11, 2008, unrelated to relevant depositions and

expert discovery.[5]

### b.    Motion to Compel

After this court ruled that Oregon law applied, Malbco filed a Second Motion to Compel

Discovery (docket # 201) for previously denied discovery. The court denied that motion (docket

# 210) and also granted AMCO's Motions for a Protective Order to quash the depositions of

David R. Lancaster, Scott Smith, and Kevin Key (docket # 219) as relating solely to the bad faith

issue surrounding the handling of Malbco's claim and not to the coverage issue. Therefore, the

time incurred with respect to these motions and depositions did not further resolution of the

---

[5] Wilcox: 11/2/07, 1.45 hrs.; 11/5/07, 1.15 hrs. (excluding matters regarding service of Complaint); 12/19/07, 0.15 hr.; 1/9/08, 0.55 hr.(.15, .20, .10, & .10); 1/16/08, 0.20 hr.; 1/23/08, 1.20 hrs. (.40, .30, & .50); 1/28/08, 2.10 hrs. (1.0 & 1.1); 1/29/08, 0.45 hr. (.25 & .20); 2/4/08, 0.40 hr. (.15, .10, & .15); 2/25/08, 0.20 hr.; 3/11/08, 1.00 hr.; 4/7/08, 0.60 hr.; 4/14/08, 1.00 hr. (.50, .25, & .25); 4/15/08, 0.25 hr.; 4/22/08, 0.95 hr. (.25, .20, & .50); 6/9/08, 1.00 hr.; 6/24/08, 0.35 hr.; 7/14/08, 0.95 hr. (.20 & .75); 7/15/08, 0.75 hr.; 7/18/08, 0.40 hr. (.25 & .15); 7/22/08, 0.80 (.50 & .30); 7/23/08, 0.25 hr.; 7/24/08, 0.35 hr.; 7/28/08, 0.55 hr.; 7/29/08, 2.65 hrs. (all but 0.25); 7/30/08, 4.50 hrs. (2.0, .80, .50, .20, & 1.0); 7/31/08, 3.75 hrs.; 8/1/08, 1.05 hrs. (.25, .20, .40 & .20); 8/11/08, 0.65  hr. (.10, .10, .10, .05, & .30); 8/12/08, 0.25 hr.; 8/15/08, 2.55 hrs.; 8/18/08, 4.30 hrs. (all but 0.01); 8/25/08, 0.55 (.25 & .30); 8/26/08, 1.30 hrs. (.50, .30, .20, .20 & .10); 8/29/08, 1.20 hrs. (.20, .80, & .20); 9/2/08, 0.20 hr.; 9/5/08, 0.75 hr.; 9/10/08, 0.20 hr.; 9/11/08, 0.35 hr. (.15 & .20); 9/12/08, 0.45 hr.; 9/15/08, 1.00 hr.; 9/19/08, 0.10 hr.; 9/24/08, 0.20 hr.; 9/29/08, 0.20 hr.; 9/30/08, 0.20 hr.; 10/1/08, 0.25 hr.; 10/9/08, 0.20 hr.; 10/21/08, 0.80 hr.; 10/24/08, 0.75 (.25, .30 & .20); 11/18/08, 0.55 hr.; Black:  7/29/08, 0.60 hr.; 7/30/08, 0.10 hr.; "PM":  7/30/08, 1.00 hr. ($105.00)

14 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

insurance coverage issues and is not recoverable.  That time consists of 19.30 hours for

Mr. Wilcox and 1.20 hours for Ms. Black.[6]

### c.        Motion for Reconsideration

Malbco also filed a Motion for Reconsideration on December 19, 2008, to avoid the

contractual limitations bar based on AMCO's conduct under the doctrines of waiver, estoppel

and tolling (docket # 202).  Although this court rejected Malbco's argument by Order dated

February 26, 2009 (docket # 220), the statute of limitations issue related to the extent of

coverage under AMCO's policy.  Thus, fees incurred with respect to that motion are recoverable.

### d.        Depositions of AMCO Witnesses

Malbco took the deposition of attorney David Rossmiller on February 18, 2009, and a

second FRCP 30(b)(6) deposition of AMCO's designees (Jim Sanatel and Carol Rawlings) on

February 11, 2009.  Although Malbco contends that these were fact witness depositions, it did

not use any of this deposition testimony either to support its Motion for Partial Summary

Judgment or at trial.  In its opposition to AMCO's Motions for Protective Order, Malbco relied

on Mr. Sanatel's testimony to identify those with the most knowledge as to why AMCO denied

Malbco's claim.  That theory related only to Malbco's attempt to insert a bad faith claim not

permitted under Oregon law.  And even though AMCO identified Mr. Rossmiller as a potential

witness in its Initial Disclosures, it did so before dismissal of Malbco's bad faith claim.  As best

as this court can discern, any facts known by these witnesses were relevant only to Malbco's tort

---

[6] Wilcox:  11/7/08, 1.90 hrs.; 11/18/08, 0.40 hr. (.20 & .20); 11/21/08, 3.80 hrs. (2.8 & 1.0); 12/19/08, 0.25 hr.; 1/5/09, 0.50 hr.; 2/5/09, 0.80 hr.; 2/6/09, 0.20 hr. (Lancaster depo.) (.05, .05, & .10); 2/10/09, 0.25 hr. (Lancaster depo.); 2/13/09, 0.25; 2/14/09, 2.40 hrs. (1.9 & 0.50); 2/16/09, 3.20 hrs. (1.8, 0.40, 0.50 & 0.50); 2/17/09, 1.45 hrs.; 2/19/09, 2.90 hrs. (.50, 2.0, & .40); 2/23/09, 1.00 hr. (0.50 estimate for hearing preparation & 0.50 hearing).  Black:  2/19/09, 1.20 hrs.

claims alleged under Washington law and not to the insurance coverage issue. Therefore, 20.5 hours for Mr. Wilcox is excluded.[7]

### e.    Bad Faith

AMCO also objects to other time entries as relating to Malbco's attempt to argue that AMCO breached the policy in bad faith by failing to properly and adequately assess and investigate the coverage claim. That objection is well-taken. Contrary to Malbco's contention, these time entries simply reflect an improper attempt to inject a bad faith claim into this case (unrelated to the statute of limitations issue) in the guise of an implied breach of contract claim. This time was not reasonable or necessary to the result and greatly increased the expense of this litigation. Therefore, the court excludes 12.2 hours for Mr. Wilcox and 32.1 hours for Ms. Black.[8]

### 6.    Assignment Issue

In addition to its own claims, Malbco attempted to pursue the claims of the seller of the hotel, Centennial Inn-Vestments, based on an assignment provision in the Purchase and Sale Agreement. Based the anti-transfer provision in its policy, AMCO raised the issue of the invalidity of the purported assignment from Centennial to Malbco in its initial Motion for Summary Judgment. Applying Oregon law, the court ruled that the assignment was unenforceable and dismissed the First Claim against AMCO premised on the policies issued to

---

[7] Wilcox: 2/2/09, 0.15 hr. (Rawlings depo.); 2/5/09, 0.30 hr. (Rossmiller depo.) (.10 & .20); 2/10/09, 0.15 hr. (Rossmiller depo.) (.05 & .10); 2/11/09, 6.25 hrs. (Sanatel & Rawlings depos.); 2/13/09, 0.25 hr. (Rossmiller depo.,); 2/14/09, 0.15 hr. (Rossmiller depo.); 2/17/09, 2.50 hrs. (Rossmiller depo.); 2/18/09, 10.75 hrs. (Rossmiller depo.).

[8] Wilcox: 11/3/08, 2.15 hrs. (1.85 & 0.3); 11/5/08, 1.10 hrs. (.50 & .60); 11/7/08, 1.00 hr.; 11/10/08, 0.55 hr.; 11/11/08, 1.25 hrs. (.20, .50, .25, & .30); 11/17/08, 0.30 hr.; 11/26/08, 0.30 hr.; 12/5/08, 1.30 hrs.; 2/14/09, 0.50 hr.; 7/2/09, 0.25 hr.; 7/13/09, 0.85 hr.; 8/6/09, 1.20 hrs. (.75, .15, .10, & .20); 8/7/09, 1.45 hrs. (.50, .50, & .45). Black: 9/11/08, 3.20 hrs. (.30 & 2.90); 9/29/08, 2.00 hrs.; 9/30/08, 0.30 hr.; 10/1/08, 2.10 hrs.; 11/17/08, 2.50 hrs.; 11/23/08, 1.30 hrs.; 11/25/08, 2.30 hrs.; 11/26/08, 3.00 hrs.; 12/1/08, 1.30 hrs.; 12/4/08, 4.20 hrs.; 7/9/09, 0.40 hr.; 7/10/09, 1.50 hrs.; 7/10/09, 2.80 hrs.; 7/13/09, 5.20 hrs.

Centennial prior to July 31, 2005.  Because Malbco did not prevail on these claims, AMCO argues that the time spent on them did not contribute to the result obtained.

As discussed above, Malbco may recover fees incurred to pursue unsuccessful claims as long as those claims were reasonably related to the insurance coverage issue.  Had Malbco prevailed on the assignment issue, then its breach of contract claim would have included coverage for losses which occurred prior to July 31, 2005.  The problem is that any loss suffered prior to July 31, 2005, was before the alleged collapse of the hotel in the fall of 2005 and, therefore, had nothing to do with the collapse coverage issue on which Malbco prevailed. Hence, fees incurred with respect to the assignment issue are not recoverable, including taking the AMCO deposition to support the assignment and attempting to prove that Malbco never received the insurance policy in order to avoid the anti-transfer provision.  This time did not contribute in any way to the result obtained.  Thus, 40.05 hours by Mr. Wilcox and 22.8 hours by Ms. Black incurred on the assignment issue are not recoverable.[9]

### 7.    Collateral Source Rule

AMCO further contests the time spent by Malbco trying to apply the collateral source rule to avoid the offset for the settlement with the builder.  Although this court rejected Malbco's argument, it was related to AMCO's motion for an equitable offset.  Therefore, the fees incurred on this issue are recoverable.

---

[9] Wilcox: 2/29/08, 0.45 hr.; 3/3/08, 0.25 hr.; 5/12/08, 1.00 hr. (.30, .15, .30 & .25); 5/19/08, 1.55 hrs.; 6/13/08, 0.85 hr. (.35, .25 & .25); 6/20/08, 0.30 hr.; 8/25/08, 0.30 hr.; 8/27/08, 0.20 hr.; 8/28/08, 0.30 hr.; 8/29/08, 1.60 hrs. (.30, .80, .20, & .30); 9/4/08, 0.20 hr.; 9/5/08, 3.00 hrs. (2.0, 0.50 & 0.50); 9/8/08, 12.50 hrs.; 9/10/08, 0.30 hr.; 9/11/08, 0.80 hr. (.30 & .50); 9/24/08, 0.20 hr.; 10/21/08, 1.05 hrs.; 10/22/08, 10.00 hrs.; 10/23/08, 4.55 hrs.; 11/6/08, 0.65 hr.. Black: 5/12/08, 0.60 hr.; 6/10/08, 0.40 hr.; 6/12/08, 0.60 hr.; 7/21/08, 0.95 hr. (.25 & .70); 7/22/08, 0.25 hr.; 9/10/08, 2.60 hrs.; 9/11/08, 3.00 hrs.;  9/19/08, 4.50 hrs.; 9/23/08, 1.50 hrs.; 9/24/08, 5.20 hrs.; 9/25/08, 3.20 hrs.

### 8. Claims Against Centennial

The time spent by Malbco considering a potential claim against Centennial is not recoverable against AMCO. Therefore, 6.3 hours by Mr. Wilcox are deducted.[10]

### 9. Summary

Based on the foregoing, below is a summary of hours deducted for unsuccessful and unrelated claims:

| Reason | Wilcox | Black | Lamb |
|---|---|---|---|
| Pre-collapse | 1.4 | | |
| Arbitration | .3 | | |
| Choice of law | 55.4 | 24.9 | |
| Dineen Declaration | 12.45 | | |
| Motion to Bifurcate/Stay | 3.4 | 5.7 | |
| Bad faith discovery | 46.0 | 0.7 | 1.0 |
| Motion to Compel | 19.3 | 1.2 | |
| Depositions of AMCO | 20.5 | | |
| Bad faith claims | 12.2 | 32.1 | |
| Assignment issue | 40.05 | 22.8 | |
| Claims against Centennial | 6.3 | | |
| **TOTAL** | **217.3** | **87.4** | **1.0** |

---

[10] Wilcox: 10/10/07, 4.10 hrs.; 1/4/08, 0.50 hr.; 1/9/08, 0.70 hr. (.30 & .40); 9/19/08, 0.30 hr.; 9/24/08, 0.70 hr. (.40 & .30).

C.     **Washington Counsel**

Malbco retained counsel from Spokane, Washington, to file and litigate this case which ended up, over Malbco's objection, in Oregon.  While conceding that Malbco is entitled to retain counsel of its choice, AMCO maintains that this decision increased the expense of litigation because Mr. Wilcox traveled from Spokane to Portland or Eugene numerous times, often choosing to drive rather than fly.  In addition, retaining Washington counsel resulted in the need to also retain an Oregon attorney, Gregory Miner, as local counsel, who spent most of his time reviewing some of the documents relating to this case.

This court cannot fault Malbco for retaining Washington counsel.  First, Mr. Wilcox was quite familiar with the hotel and the events leading up to this coverage action.  Because he represented Malbco in the arbitration proceeding against the builder, his retention in this subsequent litigation avoided the need to educate new counsel.  Had AMCO not successfully changed the venue to Oregon, Malbco would have incurred no additional travel time for Mr. Wilcox.  Second, Mr. Wilcox often was accompanied on his drives to Portland by James Mulloy, the principal owner of Malbco, and used the travel time to perform other substantive work on the case in order to minimize litigation expenses.  Third, AMCO's lead counsel also was a Washington attorney who flew or drove to Portland and Eugene on numerous occasions. In this respect, AMCO is like the pot calling the kettle black.  Therefore, this court will not deduct any fees based on Malbco's failure to retain only Oregon counsel.

///

///

///

D.    **Non-lawyers**

Malbco's billings include the following charges for time incurred by two paralegals, two

legal assistants, and a librarian at rates from $95 to $130 per hour:

| | |
|---|---|
| Carol A. Plzak ("CAP"), Paralegal: | $ 276.00 |
| Penny M. Lamb ("PM"), Legal Assistant: | 1,554.00 |
| Janet K. MacFarlane ("JKM"), Paralegal: | 65.00 |
| Katharine M. Simonson, Legal Assistant ("KS") | 3,300.00 |
| Becky A. Wentz, Librarian ("BAW") | 1,995.00 |

Wilcox Decl. (docket # 387), ¶ 23.

AMCO objects to all of these fees as not constituting compensable legal services.

However, fees for non-attorneys, such as paralegals, whose labor contributes to the work product

of an attorney may be awarded, provided that attorneys in the relevant market customarily bill

clients separately for such work.  *See Missouri v. Jenkins ex rel. Agyei*, 491 US 274, 284-89

(1989); *Trustees of Const. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*,

460 F3d 1253, 1256-57 (9th Cir 2006).  The only caveat is that tasks routinely performed by

secretaries and other support staff that are already built into a lawyer's hourly rate should not be

separately compensated as part of an attorney fee award.

Although Malbco did not respond to this objection, a review of the billing records reveals

that most of the time incurred by the paralegals and legal assistants constitutes work that an

attorney would otherwise be required to perform and that are customarily billed separately.

Those tasks include acquiring information for serving defendants, preparing stipulations,

segregating privileged documents for review by an attorney, locating documents to be produced, reviewing local rules, drafting motions to compel, and reviewing files.

In contrast, time spent by legal assistants to create a zip file for photos on a CD and link for client to access a website, to create power point presentation for trial and to gather cost invoices falls more into the clerical category, as does the time incurred by the librarian to index contents of computer disks, obtain prints from photographs, and index and label exhibits. Based on this court's experience, such clerical duties are customarily treated by Portland attorneys as part of an attorney's overhead and not separately billed. *Missouri*, 491 US at 288 n10 ("purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them. . . .' [The] dollar value [of such non-legal work] is not enhanced just because a lawyer does it.'"); *In re North*, 59 F3d 184, 195 (DC Cir 1995) (cost of support staff properly allocable to overhead); *Allen v. United States Steel Corp.*, 665 F2d 689, 697 (5th Cir 1982) (paralegal costs may be recovered "only to the extent that the paralegal performs work traditionally done by an attorney"). Malbco has submitted no evidence to permit this court to conclude otherwise. Therefore, this court deducts $65.00 for legal assistant Ms. MacFarlane ("JMK") to create a zip file and link, $2,310.00 for legal assistant Ms. Simonson ("KS") to create a power point presentation,[11] $990.00 for legal assistant time by Ms. Simonson to gather cost invoices and prepare an arbitration spreadsheet,[12] and $1,995.00 for all of the time by the

///

///

---

[11] 9/18/09, 2.50 hrs.; 9/21/09, 2.50 hrs.; 9/21/09, 2.00 hrs.; 9/22/09, 3.00 hrs.; 9/23/09, 4.50 hrs.; 9/24/09, 3.00 hrs.; 9/25/09, 3.50 hrs.

[12] 10/5/09, 3.50 hrs.; 10/16/09, 3.00 hrs.; 10/19/09, 0.50 hr.

21 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

librarian, Ms. Wentz ("BAW").  That leaves 4.0 hours recoverable for Ms. Simonson for non-clerical time[13] and all of the time for Ms. Lamb ("PM") (except as previously deducted).

Malbco also seeks $276.00 for Ms. Plzak ("CAP") for 2.3 hours at $120 per hour on September 24, 2007.  According to the time records submitted, she also billed 1.0 hour on October 24 and 25, 2007, at $125/hour.  However, Malbco appears to have made a typographical error by not including that later time in its total request.  All of Ms. Plzak's time is recoverable since it related to locating information concerning the defendants for service of process.  Accordingly, Malbco is entitled to recover a total of 3.3 hours, or $401.00. for Ms. Plzak's time.

### E.    Motion for Attorney Fees

Most of the time entries before January 22, 2010, do not segregate the time spent on the attorney fee petition from the other post-trial motions.  Based on a review of the time entries, AMCO estimates that Mr. Wilcox spent at least 31.9 hours and Ms. Black spent at least an additional 20.1 hours, for a total of over 50 hours, preparing the motion for attorney's fees through January 22, 2010.  In contrast, this court estimates about 47 hours and Malbco estimates only about 30 hours.  From January 22 through March 8, 2010, Malbco incurred another $3,226.50 preparing the attorney fee motion, but without providing the total number of additional hours on which that amount is based.  Wilcox Decl. re: Reply (docket # 415), ¶ 3 & Ex. A.  As best as this court can discern, it appears to be about another 9.0 hours for Mr. Wilcox and another 1.0 hour by Ms. Black.  In any event, this court agrees with AMCO that this number of hours is excessive.

---

[13]  11/3/09, 1.50 hrs.; 11/4/09, 0.50 hr.; 1/21/10, 2.00 hrs..

A fee request that is supported by simple affidavits and well-kept records should not be a major task.  The law in this area is not new or complex and should not demand significant time to research.  Admittedly, Malbco's fee request was somewhat complicated by the need to exclude time on unrelated claims.  However, much of the time was spent to cure the block billing problem by assigning time to specific activities.  AMCO should not have to pay for that time when the problem was caused by opposing counsel's unacceptable practice of block billing.

In *Welch*, 480 F3d at 950, the Ninth Circuit affirmed a reduction in time spent to prepare an attorney's fee motion from 13 hours to nine hours, a 30% reduction. In *Wyant v. Allstate Indem. Co.*, 2009 WL 387737 (WD Wash 2009), the district court ordered a 75% reduction of excessive time (over 85 hours) spent to prepare an attorney's fee motion.  Similarly here, a substantial reduction of time is warranted.  Based on a careful review of the legal memoranda, this court concludes that a reasonable number of hours is at least half those claimed by Mr. Wilcox and Ms. Black.  As a result, this court deducts 20 hours for Mr. Wilcox and 10 hours for Ms. Black incurred prior to January 22, 2010, and all hours incurred thereafter.

AMCO also objects to the time spent by Gregory Minor, Malbco's local counsel, to submit his declaration as an "expert" to testify concerning the reasonableness of the fees claimed by Mr. Wilcox's firm.  Mr. Miner seeks an award of $2,021.50 for time incurred in January 2010 to develop that expert opinion, as well as to support his own fee request.  Miner Decl. (docket # 388, Ex. 2).  Mr. Miner is not a neutral "expert," but is testifying on behalf of his client. Therefore, his opinion is subject to bias and carries little weight.  But even if he provided a more useful expert opinion, his fee for doing so is not subject to reimbursement by AMCO.  As a general rule, expert fees are not recoverable by the prevailing party as part of the attorney fee

award or costs unless specifically authorized by statute.  Had Malbco hired another expert to

provide an opinion on the reasonableness of fees, it could not have recovered such expert fees

from Malbco.  Once again, however, it is difficult to discern what portion of the $2,021.50

charge by Mr. Miner is attributable solely to his expert opinion.  Based on this court's review, all

but 0.30 hour on January 20, 2010, and 0.25 on January 21, 2010, by Mr. Miner is fairly

apportioned to his expert opinion.  Therefore, this court will deduct $1,842.75 and allow only the

sum of $178.75 (0.55 x $325/hour = $178.75).

**F.    Unnecessary or Duplicative Effort**

AMCO also objects to a number of entries as unnecessary or duplicative.  This court

agrees and therefore deducts 1.65 hours incurred by Mr. Wilcox for the following:

3/16/09: 0.95 hour (.25, .50, & .20):  Motion to Compel concise statement of material

facts because the court had waived that statement (docket # 98);

8/24/09:  0.50 hour: Taking exhibits to Fed Ex because this is not a legal service; and

9/30/08: 0.20 hour:  Duplicate entry with 9/25/08 to review order allowing sur-reply.

This court also has found a number of instances where two attorneys billed for a

conference attended by both attorneys.  Conferences among attorneys are not unreasonable.  In

fact, productive work is often accomplished in such meetings, and a supervising senior attorney

will need to confer with attorneys working under him or her as part of the supervisory role.

Nonetheless, it cannot be disputed that one attorney could have performed all the work on this

case.  As such, having more than one attorney involved in the case, which necessitates a certain

amount of attorney conferencing, while understandable, makes it unreasonable to shift the

charges for both attorneys to another party. *Institute for Wildlife Protection v. U.S. Fish and*

*Wildlife Serv.*, 2008 WL 4866063, *10 (D Or November 5, 2008) ("[g]ood billing judgment requires that time spent in conference among multiple attorneys be billed to only one of those attorneys").  In those instances where two attorneys billed for a conference (in person or by email), the court excludes the time of the more junior attorney, Ms. Black, when her time has not otherwise been deducted.  Due to the presumption against block billing, if two attorneys billed hours on the same day, but only one listed a conference, this court assumes that both attorneys included that conference in the total number of hours.  Therefore, 10.6 hours incurred by Ms. Black is excluded.[14]

This court also found a mathematical error.  The entry on "2/10/09" for 9.55 hours by Mr. Wilcox should be 8.55 hours, requiring a deduction of 1.0 hour.

In addition, due to redactions, it is difficult to determine if the certain time was necessary. The other entries before and after the redacted entries do little to shed light on the tasks performed.  Based on the lack of sufficient detail to confirm the necessity of these tasks to resolving the coverage issue, this court deducts 0.90 hour incurred by Mr. Wilcox[15] and 16.8 hours by Ms. Black.[16]

///

///

---

[14]  6/12/06, 0.20 hr.; 9/17/07, 0.70 hr.; 10/8/07, 0.80 hr.; 10/12/07, 0.50 hr.; 10/16/07, 0.30 hr.; 10/23/07, 0.20 hr.; 2/8/08, 0.30 hr.; 2/25/08, 0.20 hr.; 2/28/08, 0.30 hr.; 3/4/08, 0.20 hr.; 3/5/08, 0.25 hr.; 3/11/08, 0.30 hr.; 6/10/08, 0.20 hr.; 7/22/08, 0.25 hr.; 7/30/08, 0.10 hr.; 12/8/08, 0.30 hr.; 2/5/09, 0.30 hr.; 2/13/09, 0.40 hr.; 2/19/09, 0.40 hr.; 2/20/09, 0.50 hr.; 2/25/09, 0.20 hr.; 4/30/09, 0.30 hr.; 6/3/09, 0.15 hr.; 6/9/09, 0.20 hr.; 6/10/09, 0.25 hr.; 6/11/09, 0.30 hr.; 6/30/09, 0.20 hr.; 8/17/09, 0.70 hr.; 8/18/09, 0.30 hr.;, 8/20/09, 0.25 hr.; 8/24/09, 0.30 hr.; 9/10/09, 0.30 hr.; 10/3/09, 0.25 hr.; 1/13/10, 0.20 hr.; 1/21/10, 0.30 hr.

[15]  7/30/08, 0.25 hr.; 10/14/09, 0.40 hr.; 11/13/09, 0.25 hr.

[16]  7/23/08, 5.90 hrs.; 7/24/08, 2.50 hrs.; 10/7/09, 4.60 hrs.; 10/13/09, 3.80 hrs.

### G.      Results Obtained

Factors to be considered under ORS 20.075 include the amount involved in the controversy, the results obtained, and the objective reasonableness of the parties in pursuing settlement.  When Malbco filed this lawsuit, it sought approximately $2.2 million in damages, not including damages for extra-contractual claims.  Malbco never engaged in settlement negotiations or made a settlement demand.  By the time of trial, Malbco's claim decreased to something over $1.8 million.  Ultimately Malbco recovered a jury verdict of $941,268.00 and an amended judgment, after applying the offset, of $363,324.13 which is a small fraction of the amount sought.  Yet Malbco now seeks attorney fees totaling nearly 1.5 times the amount of the amended judgment.

AMCO suggests the fees awarded should be more compatible with the result obtained.  This court agrees.  However, when considering the jury verdict as compared to the amount sought prior to trial, Malbco obtained a favorable result, albeit not the best possible result.  The amount of the offset has been hotly disputed, such that Malbco could not predict the outcome with any certainty.  And although Malbco can be faulted for failing to make any settlement overtures, the same can be said for AMCO.  Given the complexity of this case, this court cannot conclude that the total amount of attorney fees require a reduction over and above the reduction justified by the foregoing detailed analysis of the hours billed for specific tasks.

### H.      Miscellaneous

In reviewing the time records submitted, this court notes various entries for "KEK" and "LMH" in 2006.  These persons are not identified.  However, they also are not included in the total attorney fee request.  Wilcox Decl. (docket # 387), ¶ 23.

Malbco also seeks to recover 0.30 hour for Michael D. Franklin at a rate of $160 per hour. *Id*. This is confusing since the time records submitted state "no charge" for 0.30 hour billed by "MDF" on November 7, 2006. The only other entry for "MDF" is 0.10 hour ($16.00) on March 22, 2007, for a conference with Mr. Wilcox regarding prevailing party fees. Thus, at best, Malbco is only entitled for 0.10 hour for Mr. Franklin. However, no information is submitted to justify any particular hourly rate for Mr. Franklin. Absent such information, all time for Mr. Franklin is deducted.

**I.    Summary**

Based on the foregoing, the following hours are deducted:

| Reason | Wilcox | Black | Lamb |
|---|---|---|---|
| Unrelated Claims | 217.3 | 87.4 | 1.0 |
| Motion for Attorney Fees | 20.0 | 10.0 | |
| Unnecessary/duplicative effort | 3.55 | 27.4 | |
| **TOTAL** | **240.85** | **124.8** | **1.0** |

These hours are spread over the course of several years. Since the hourly rates changed annually, this summary is further broken down into the time periods relating to those hourly rates prior to January 22, 2010:

| | | CLAIMED[17] | DEDUCTED | ALLOWED |
|---|---|---|---|---|
| **Wilcox**: | 2005-9/30/06 | 8.10 | 1.40 | 5.90 |
| | 10/1/06-9/30/07 | 17.05 | 0.30 | 16.75 |

---

[17] The number of hours claimed by time period is based on the table in paragraph 23 of the Wilcox Declaration (docket # 387).

|          |                  |        |       |        |
|----------|------------------|--------|-------|--------|
|          | 10/1/07-9/30/08  | 244.25 | 130.90| 113.35 |
|          | 10/1/08-9/30/09  | 999.10 | 88.25 | 910.85 |
|          | 10/1/09-1/22/2010| 204.20 | 20.00 | 184.20 |
| **Black**: | 2006-9/30/07   | 76.75  | 0.90  | 75.85  |
|          | 10/1/07-9/30/08  | 135.40 | 71.90 | 63.50  |
|          | 10/1/08-9/30/09  | 138.00 | 32.85 | 105.15 |
|          | 10/1/09-1/22/2010| 27.50  | 19.15 | 8.35   |

In addition, all time after January 22, 2010, in connection with the attorney fee motion is deducted.

In addition, the following amounts are deducted:

Michael D. Franklin (0.30 hr. at $160/hour):   $  48.00

Ms. Lamb:                                         105.00

Ms. Sorenson:                                   3,300.00

Ms. Wentz:                                      1,995.00

Mr. Miner:                                      1,842.75

## III.   Hourly Rates

To determine a reasonable hourly rate, the court looks at the "prevailing market rates in the relevant community . . . ." *Blum v. Stenson*, 465 US 886, 895 (1984). These rates are set by determining what a lawyer of comparable skill, experience, and reputation could command in the relevant community for similar litigation. *Id* at n11. This court affords the Oregon State Bar Economic Surveys significant weight in at least establishing a starting point for reasonable rates (available at http://www.osbar.org/_docs/resources/07EconSurvey.pdf). Fee petitions must

28 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

provide justification for requested hourly rates higher than reported by the survey, such as inflation or special expertise.

Mr. Wilcox has been practicing commercial litigation since 1994. Ms. Black, his associate, has been practicing commercial litigation since 2004. Therefore, when Malbco filed suit in 2007, Mr. Wilcox had 13 years of experience, and Ms. Black had three years of experience. Beginning with the filing of suit in 2007, Mr. Wilcox seeks hourly rates of $280 to $310, and Ms. Black seeks hourly rates of $170 to $190. Almost all of Ms. Black's time on this case was performing legal research and drafting memos documenting her research.

In contrast, when Malbco filed suit, defense counsel Michael Rogers had practiced law for 21 years, including approximately 17 years in the area of insurance coverage litigation. The other defense attorney, Earle Bravo, had practice law for seven years, mostly in the area of construction litigation. Mr. Rogers' hourly rates during the litigation of this suit were $185 to $200, and Mr. Bravo's hourly rates were $145 to $160.

The relevant community for similar litigation is the community of lawyers in private practice in the Portland area. According to the most recent 2007 OSB Economic Survey, the average rate was $225 per hour and the median rate was $230 per hour for lawyers in Portland with 13-15 years experience. The category of "Civil Litigation, Plaintiff (excludes Personal Injury)" lists similar rates, although not broken down by years of experience; the average rate was $240 per hour and the median was $225 per hour. Mr. Wilcox's requested rates of $265 for October 2006 through September 2007 would place him near the 75th percentile ($275) of Portland lawyers with 13-15 years experience and over the average and median, but below the 75th percentile ($294), for "Civil Litigation, Plaintiff (excludes Personal Injury)." His rates

29 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

increased by $15 every year to $310 in October 1, 2009, which represents an increase of slightly

over 5% per year, well over the CPI increase of 2.8% in 2008, increase of 4.1% in 2009, and

decrease of 0.4% in 2010.[18]  Based on this comparison, Mr. Wilcox's requested hourly rates are

too high.  He has submitted no information, such as special expertise, reputation in the

community, or quality of legal work, to justify more than the average hourly rates.  Thus, a

reasonable hourly rate in 2007 for his services is, at best, the average hourly rate of $240 for

plaintiff's civil litigation, which is more than both the average and median rates for Portland

lawyers with his years of experience.  Adding the actual inflation figures for subsequent years,

his rates are reduced to $247 for 2008, $257 for 2009 and $256 for 2010.

In contrast, Ms. Black's hourly rates are within a reasonable range.  After graduating

from Gonzaga University Law School in 2004, Ms. Black worked as a judicial clerk and started

in the area of commercial litigation in 2006.  According to the most recent 2007 Economic

Survey, the average rate was $177 per hour and the median rate was $180 per hour for lawyers in

Portland with up to three years experience and the average rate was $188 per hour and the

median rate was $185 per hour for lawyers in Portland with four to six years experience.  Her

rate through October 1, 2007, of $170 falls slightly below the average for her experience level in

2007 and even her highest rate starting October 1, 2009, of $190 is only slightly above the

average and median for her experience level.

///

///

## V.    <u>Summary</u>

---

[18] *See* CPI historic table available at ftp://ftp.bls.gov/pub/special.requests/cpi/cpiai.txt.

Based on the above, Malbco is awarded fees of $368.378.85, calculated as follows:

| NAME | YEAR | ALLOWED HOURS | RATE | TOTAL |
|------|------|---------------|------|-------|
| Wilcox | 2005-9/30/06 | 5.90 | 240 | $  1,416.00 |
| | 10/1/06-9/30/07 | 16.75 | 240 | 4,020.00 |
| | 10/1/07-9/30/08 | 113.35 | 247 | 27,997.45 |
| | 10/1/08-9/30/09 | 910.85 | 257 | 234,088.45 |
| | 10/1/09-1/22/2010 | 184.20 | 256 | 47,155.20 |
| Black | 2006-9/30/07 | 75.85 | 160 | 12,136.00 |
| | 10/1/07-9/30/08 | 63.50 | 170 | 10,795.00 |
| | 10/1/08-9/30/09 | 105.15 | 180 | 18,927.00 |
| | 10/1/09-1/22/2010 | 8.35 | 190 | 1,586.50 |
| Miner | | | | 178.75 |
| Plzak (paralegal) | | 2.3 | 120 | 276.00 |
| | | 1.0 | 125 | 125.00 |
| Simonson (legal assistant) | | 4.0 | 110 | 440.00 |
| Lamb (legal assistant) | | 13.8 | 105 | 1,449.00 |
| Post-trial motions 1/22-3/8/10 ($11,105 - $3,226.50) | | | | 7,788.50 |
| **TOTAL** | | | | $368,378.85 |

///

///

///

31 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

## COSTS

### I.     Legal Standard

This court has the discretion to award costs to a prevailing party pursuant to FRCP 54(d).

However, this rule is not read "as giving district judges unrestrained discretion to tax costs to

reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his

case." *Farmer v. Arabian Am. Oil Co.*, 379 US 227, 235 (1964).  Federal courts are limited to

assessing only those costs enumerated under 28 USC § 1920.  *Crawford Fitting Co. v. J.T.*

*Gibbons, Inc.*, 482 US 437, 441-42 (1987).  However, courts are free to interpret the meaning of

a cost within § 1920.  *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F2d 175, 176 (9th Cir 1990)

(*per curiam*), *cert denied*, 502 US 812 (1991).

### II.    Unauthorized Costs

#### A.     Expert Witness Fees

Malbco seeks to recover $61,218.01 for expert fees.  Expert witness fees are not

recoverable as costs, but are recoverable only pursuant to contractual or statutory authority.

*Evanow v. M/V Neptune*, 163 F3d 1108, 1117 (9th Cir 1998); *Asiatic Co. (USA), Inc. v.*

*Expeditors Int'l of Wash., Inc.*, 183 Or App 528, 529, 52 P3d 1112, 113, *review denied*,  335 Or

114, 61 P3d 255 (2002).  There is no contractual or federal or state statutory authority for

Malbco to recover expert fees.

Malbco argues that reasonable expenses paid for expert witnesses are allowable when

necessary to the case, citing *American Timber & Trading Co. v. Niedermeyer*, 276 Or 1135, 558

P2d 1211 (1976).  However, the opinion in that case does not clearly indicate the basis for the

court's award; the case involved equitable claims; the statutes cited have since been repealed;

and subsequent Oregon authority clearly does not allow an award of expert witness fees absent

contractual or statutory authority.  *Welch v. U.S. Bancorp Realty and Mortg. Trust* , 286 Or 673,

709-10, 596 P2d 947, 966 (1979); *Maginnis v. Dep't of Rev.*, 1999 WL 242518, *2 (Or Tax

1999); *Portland Gen Elec. Co. v. Dep't of Rev.*, 1988 WL 126215, *4 (Or Tax 1988).  Thus,

Malbco's request for expert witness fees is denied.

### B.    Witness Fees

Malbco seeks to recover $7,093.88 for witness fees.  Witness fees are limited to the

maximum permitted by 28 USC § 1821.  *Evanow*, 163 F3d at 1118.  AMCO argues that the

witness fees claimed by Malbco exceed the statutory cap, but has not provided the court with any

specifics.  However, Malbco represents that the majority of its requested witness fees were

charged by expert witnesses in order to take their depositions.  No doubt these expert witnesses

would not have attended their depositions without payment of substantial witness fees.

However, as discussed above, there is no authority in this case to shift any expert witness fees

costs from the prevailing party to the losing party.  Thus, Malbco's request for witness fees is

denied with leave to renew to request statutory witness fees only.

### C.    Copying Charges

Malbco seeks to recover copy charges of $2,507.59.  Under 28 USC § 1920(4), costs may

be recovered for "copies of papers necessarily obtained for use in the case."  Copying costs for

documents produced in discovery, submitted to the court for consideration of motions, and used

as exhibits at trial are recoverable.  *See Lee v. Walters*, 2002 WL 31972186, *1 (D Or, Dec 23,

2002), citing *Fressell v. AT&T Technologies, Inc.*, 103 FRD 111, 115-116 (ND Ga 1984); *Erving

Paper Mills v. Hudson-Sharp Mach. Co.*, 271 F Supp 1017, 1023 (ED Wis 1967).  However,

recoverable copying costs do not include extra copies of filed papers, correspondence, and copies of cases since these are prepared for the convenience of the attorneys. *Id*; *Frederick v. City of Portland*, 162 FRD 139, 144 (D Or 1995). Extra copies made for the convenience of counsel are not compensable. *Welch v. Frederickson*, 2008 WL 5082124 (D Or 2008)

AMCO objects to the copy charges because Malbco fails to state whether (or, if so, which parts of) the documents copied were produced in discovery, submitted to the court for consideration of motions, or used as exhibits at trial. Malbco's only response is that this case involved thousands of documents and photographs exchanged between the parties in the course of discovery. However, it is incumbent upon Malbco to substantiate its claim of taxability by showing at least what the documents were and the use made of them. "Without such a showing it was impossible to determine whether they had been 'necessarily' obtained." *Perlman v. Feldmann*, 116 F Supp 102, 112 (D Conn 1953). A conclusory assertion, without any verification is not sufficient. *Goluba v. Brunswick Corp.*, 139 FRD 652, 656 (ED Wis 1991); *Welch*, 2008 WL 5082124 at *5 (declining to award where plaintiffs failed to provide descriptions of copying costs sufficient to enable court to determine what or who they were for). Thus, Malbco's request for copying charges is denied with leave to renew.

### D.    <u>Deposition Transcripts</u>

While 28 USC § 1920(2) allows recovery of court reporter fees for stenographic transcripts, such transcripts must be "necessarily obtained for use in the case." The cost of taking depositions and obtaining deposition copies is properly taxed if introduced into evidence or used at trial for impeachment or cross-examination. *Indep. Iron Works, Inc. v. U. S. Steel Corp.*, 322 F2d 656, 678 (9th Cir), *cert denied*, 375 US 922 (1963). The cost of a deposition not

used at trial may be taxed if taking the deposition was reasonable as part of the pretrial preparation of the case, rather than for the convenience of counsel, or if the deposition was required for a dispositive motion. *Id* at 678-79; *see also Principe v. McDonald's Corp.*, 95 FRD 34, 37 (ED Va 1982). In other words, to be taxable, depositions must not be merely for discovery. *See Murphy v. Amoco Prod. Co.*, 558 F Supp 591, 594 (D ND 1983), *aff'd,* 729 F2d 522 (8th Cir 1984) ("[c]opies of depositions noticed by the prevailing party . . . are more in the nature of an expense than of a taxable cost").

Malbco concedes that $408.54 should be deducted for the deposition of Gordon Connell which was inadvertently included.

AMCO objects to taxing costs for the depositions transcripts of Dawn Thompson, William Dineen, Jim Sanatel, Carol Rawlings, and David Rossmiller which were not used at trial and which were taken for issues on which Malbco did not prevail. This court agrees and disallows those costs.

AMCO also objects to taxing the cost of three hearing transcripts as not necessarily obtained for use in this case. Malbco responds only with the conclusory statement that they were necessarily obtained for use in this case without providing any specifics. As far as this court can tell, the hearing transcripts were obtained merely for the convenience of Malbco and its counsel and, thus, were not necessary to the prosecution of this case. Therefore, the costs of the hearing transcripts is disallowed.

Unfortunately, Malbco has not provided a list of the cost per deposition or hearing transcript, but simply submitted all of its invoices for all costs as one exhibit. Wilcox Decl. (docket # 387), Ex. B. This court has neither the time nor inclination to sort through all those

35 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

invoices and therefore will deny all of the transcript and hearing costs with leave to renew for only those which are properly taxable.

**E.**    **Summary**

The only cost which is properly taxable at this point is the $200.00 filing fee. The remaining costs are disallowed with leave to renew for statutory witness fees, copying charges, and allowable deposition costs in compliance with this court's order.

## ORDER

For the reasons set forth above, Malbco's Motion to Establish Reasonable Attorneys' Fees and Costs (docket # 385) is GRANTED in the reduced sum of $368,378.85 and costs in the sum of $200.00 with leave to renew to request costs for statutory witness fees, copying charges, and allowable deposition costs in compliance with this court's order.

DATED this 22nd day of June, 2010.

s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge